[Civ. No. 5461. First Appellate District, Division One.—May 20, 1927.]

# W. LLOYD CONOVER, Appellant, v. STUART S. SMITH et al., Respondents.

[1] CORPORATIONS — AGREEMENT FOR DIVISION OF PROFITS IN CONTEMPLATION OF INCORPORATION — ENFORCEMENT OF. — An agreement made by persons interested, in contemplation of incorporation, where the interests of others are not affected, controls the conduct of the corporation's affairs, and the corporate fiction will be ignored, if necessary, for enforcing the portion of the agreement for a division of the profits; the corporation, following such agreement, being the mere agency of the associates to carry out the agreement.

[2] CONTRACTS — INTERPRETATION — MUTUAL INTENTION. — A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting so far as the same is ascertainable.

[3] ID. — INCONSISTENT PROVISIONS — SECTION 3534, CIVIL CODE. — Where specific provisions of a contract and general provisions dealing with the same subject matter are inconsistent, the specific provisions are controlling, under section 3534 of the Civil Code.

[4] ID. — CONSTRUCTION — ENTIRETY OF CONTRACT—INTENT.—In interpreting a contract, all parts of it are to be given effect, if this may be done without doing violence to the manifest expressed intent of the parties.

---

1. See 6 Cal. Jur. 595.
2. See 6 Cal. Jur. 252.
3. Repugnant and conflicting clauses in contracts, note, 60 **Am. St. Rep.** 93. See, also, 6 Cal. Jur. 282; 6 R. C. L. 847.
4. See 6 Cal. Jur. 259; 6 R. C. L. 837.

[5] Id. — Language of Contract — Construction.—The terms of a contract are to be construed according to the ordinary and usual acceptation of the language, unless a contrary intent plainly appears.

[6] Corporations — Contracts—Division of Profits—Construction. Under a contract made prior to incorporation between parties who became sole stockholders, providing that the profits made by the corporation were to be divided between the first party and second party in proportion to the shares of stock held by each as dividends on the stock, and that the first party should have the right to purchase the stock of the second party at par, or at the option of the second party at the amount invested therein, together with ten per cent interest annually after deducting dividends received, on the exercise of the option to purchase, the second party was entitled to insist on payment at par (the face value of the stock), plus a proportionate share of the profits earned, although not yet divided as dividends.

---

(1) 14 C. J., p. 62, n. 80.    (2) 13 C. J., p. 521, n. 18.    (3) 13 C. J., p. 537, n. 98.    (4, 5) 13 C. J., p. 527, n. 46, p. 531, n. 70.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge. Reversed.

The facts are stated in the opinion of the court.

Livingston & Livingston and Sapiro, Levy & Hayes for Appellant.

E. L. Stockwell and Redman & Alexander for Respondents.

CAMPBELL, J., *pro tem.*—This is an action to recover profits made by a corporation in which appellant W. Lloyd Conover and respondent Stuart S. Smith were the sole stockholders. The action is founded on a contract executed by appellant and respondent Smith providing for the organization of the corporation and for the division of the profits between the parties on the basis of their respective stock interest. The trial court held against appellant on his claim for profits and appellant has appealed. The appeal has been taken on the judgment-roll alone.

---

5.   See 6 Cal. Jur. 284; 6 R. C. L. 843.

From the findings of fact the following history of the case appears: Prior to May 1, 1920, respondent Smith was engaged in the business of dealing in road machinery. He needed capital. Accordingly he interested appellant Conover, and on May 1, 1920, a contract was executed providing substantially as follows: The organization of a corporation to take over respondent Smith's business; the transfer of the business to the corporation in exchange for the issuance to respondent Smith of 100 shares of stock of the par value of $10,000, subject to a valuation of the net worth of the business; the purchase by appellant for cash of 20 shares of the stock at par or $2,000 and an additional block of 80 shares at par value when further capital was required; the division of the profits of the corporation between appellant and respondent in proportion to the number of shares held by each, this clause, being article VI of the contract: "It is further understood and agreed that the profits made by said corporation are to be divided between the party of the first part and the party of the second part in proportion to the shares of stock held by each in said corporation as dividends on said stock." Other material provisions of the contract have to do with the terms upon which respondent Smith acquired the interest of appellant Conover in the company. These provisions are contained in article VIII and are as follows: "It is further understood and agreed that the party of the first part (respondent Smith) shall have the right at any time before the amount of stock purchased by the party of the second part (appellant Conover) equals the amount of stock purchased by the party of the first part, to purchase the stock of the party of the second part at par or at the option of the party of the second part at a price that will return the party of the second part the amount invested in said stock, together with ten (10) per cent interest annually on the purchase price of said stock from the date of the purchase of said stock, after deducting dividends received on said stock from said corporation." Pursuant to the contract the corporation was organized under the name of Stuart S. Smith & Co., and appellant and respondent Smith became the principal directors and officers; the remaining directors were dummies having no financial interest in the company. The board of directors authorized the sale and issuance of stock, and 100

shares were issued to respondent Smith in purchase of his business at the par value of $10,000 and 70 shares—20 at one time and 50 later—were issued to appellant Conover, for which he paid the par value of $7,000.

The corporation engaged in business and earned profits. The amount of the profits was not found, the amount being of no importance under the construction placed upon article VIII of the contract by the trial court.

On September 29, 1920, respondent Smith wrote appellant exercising his option to purchase appellant's stock, stating, "I have decided to exercise the option under my contract," and inclosed a check for $7,191.66, describing it as "the amount of money invested by you with ten per cent interest." Appellant refused the check, returned it to respondent Smith and demanded his share of the profits and that the par value of the stock be paid to him. Pending negotiations, as the controversy was over the question of whether appellant was entitled to his share of the profits earned by the corporation or was obliged to take the amount he had invested with ten per cent interest, it was agreed that appellant should transfer his stock to respondent Smith without prejudice to the position of either party. Upon these terms the payment of $7,000 was made and the stock transferred. The negotiations were of no avail and this action resulted.

Appellant urges as grounds for reversal the following points: " (a) The corporation was a mere form through which Conover and Smith, the sole parties in interest, did business. The law disregards the corporate fiction. Hence, the corporation was bound by the provisions of the contract pursuant to which it was organized, and the covenant for division of profits was valid and enforceable not only as to the individuals, but also as to the corporation; (b) The fact that profits were earned by the business gives Conover a complete right to the recovery of his share. The right has never been waived, lost or abandoned. The transfer of Conover's stock to Smith was—by express agreement—without prejudice to Conover's claim to profits. (c) Conover exercised his option to receive as the purchase price of his stock the par value thereof. Therefore, the alternative method of computing the price—investment plus interest, minus dividends—is utterly immaterial to the case."

[1] It seems to be the settled rule that an agreement made by the persons interested in contemplation of incorporation, where the interests of others are not affected, controls the conduct of the corporation's affairs, and that if necessary to enforce the provision in the agreement for division of profits, the corporate fiction will be ignored. An agreement made by persons interested or who really represented the interests of those afterward incorporated and whose agreement was in anticipation of the formation of the corporation and was carried out by it and recognized by it bound the parties to the agreement. The corporation, under our system, following such an agreement would be the mere agency of the associates created for the sake of convenience in carrying out the agreement as between those who made the bargain (*Chater* v. *San Francisco Sugar Refining Co.*, 19 Cal. 220, 240, 247; *Shorb* v. *Beaudry*, 56 Cal. 446; *Cornell* v. *Corbin*, 64 Cal. 197 [30 Pac. 629]; *Hunt* v. *Davis*, 135 Cal. 31 [66 Pac. 957]; *Wise Realty Co.* v. *Stewart*, 169 Cal. 176 [146 Pac. 534]; *Hocking Valley Ry. Co.* v. *Toledo Terminal Ry. Co.*, 99 Ohio St. 35 [122 N. E. 35]; *In re Wilson's Estate*, 85 Or. 604 [167 Pac. 580]; *Griffin* v. *Brody*, 167 N. Y. Supp. 725).

Equity will look through form to substance where corporations are but the mere instrumentalities through which the associates acted (*Wise Realty Co.* v. *Stewart*, *supra*).

Counsel for respondents do not question the principles upheld in the foregoing authorities. In their closing brief they concede that in a special contract such as the one in this case the corporate fiction should be ignored and the agreement of the parties should control. Both appellant and respondents agree that there is only one issue in the case and that is the construction of articles VI and VIII of the contract.

The construction placed upon the contract by the trial court is that appellant is not entitled to any of the profits earned by the corporation, as no dividends had been declared prior to respondent Smith exercising his option to purchase appellant's stock under article VIII of the contract, and that appellant was entitled only to the return of the $7,000 invested, together with ten per cent interest from the date of the payment for the stock amounting to $288.88. With this construction we cannot agree.

It was contemplated that Smith and Conover would each have $10,000 in the enterprise. Conover's investment, however, was to be gradually made as the corporation required additional capital. So the contract provided alternative terms upon which Smith could acquire Conover's interest. If at any time after the stock held by Conover should equal that held by Smith and Conover desired to withdraw from the enterprise, he was entitled to do so and to receive from Smith the book value of his (Conover's) stock, which would naturally include appropriate provision for appreciated value of the stock in trade, for goodwill and similar assets. In addition, the contract gave Smith the right to buy out Conover's interest. If Smith chose to do so after Conover's stock became the equivalent of his, he was to pay him the book value plus ten per cent. In point of fact Conover's stock never did equal Smith's and, therefore, the controlling provisions of the contract are those which concern Smith's acquisition of Conover's stock prior to the time Conover's interest was equal to that of Smith.

Article VIII of the contract provides that before the interest of Conover equals that of Smith, Smith shall have the right to purchase the stock of Conover at par or at the option of Conover at a price that will return Conover the amount invested with ten per cent interest after deducting dividends received.

It will be observed that upon Smith's decision to buy Conover's stock he could do so by paying him par therefor, that is, the face value of $100 per share for his 70 shares, totaling $7,000. Conover, on the other hand, was given two methods of fixing the price; one, taking par, $7,000, and the earned profits not theretofore received, or, two, the amount invested together with ten per cent interest less dividends theretofore received.

The theory of this alternative is obvious. Conover, who was investing money in an enterprise in advance of going into it with the option given Smith to buy him out at will and which might turn out to be greatly against his (Conover's) wish, was given two alternatives to choose from in the event Smith exercised his option to buy. Conover would naturally choose the one which netted him the larger price. If the amount of earned profits was less than the

interest, he would take his investment with interest and *vice versa.*

[2] If Conover chose to take par—which he did—the dividends or profits were not to be deducted. It is difficult to see how the contract permits of any other interpretation. The insertion of the words "or at the option of" between the description of the two alternatives demonstrates that they are completely separate and distinct and that the provision for the deduction of dividends is concerned only with its immediate context. The logic of the situation confirms this view. "Par"—the face value of the stock—was the same amount invested, because under the contract Conover must originally buy at par. If Conover is not entitled to dividends under article VI, which provides that the profits made by the corporation are to be divided between Conover and Smith in proportion to their shares of stock, then Conover's option would mean (1) $7,000 "par" minus dividends, or (2), $7,000, "amount invested," plus interest, minus dividends. The sole difference between the two alternatives would be that one includes interest and the other does not. A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting so far as the same is ascertainable (6 Cal. Jur. 252). The parties here certainly did not intend the contract to be that if Smith desired to exercise his option to buy Conover's stock and no dividends had been declared or paid, he should say to him, "Shall I pay you $7,000 with ten per cent interest for your stock or will you have your $7,000 without interest?" "The language of a contract is to govern its interpretation, if the language is clear and explicit and does not involve an absurdity" (Civ. Code, sec. 1638).

The right of Conover to share in the profits of the corporation is governed by article VI of the contract that the profits are to be divided between the parties in proportion to the shares of stock held by each in the corporation as dividends on their stock.

The trial court decided that Conover was compelled to accept as the purchase price of his stock the amount he invested plus interest minus dividends, and as no dividends had been declared, did not find as to the amount of profits earned by the corporation.

Respondents admit that if Conover had received any profits during his connection with the enterprise, he would have been entitled to receive them. Thus, respondents say in their brief: "If the venture prospered and Conover was bought out he would receive back the amount of his investment plus dividends previously collected." Counsel for respondents argues that Conover's right to profits depends upon the declaration of a dividend prior to Smith's exercise of his option to buy Conover's stock; that paragraph VI provides that the profits made by the corporation should be divided between the parties in proportion to the shares of stock held by each "as dividends on said stock"; that there was no obligation on the part of the corporation to declare dividends until in the directors' discretion it was advisable to do so; that the paragraph in question adds nothing to the contract, for it is merely a declaration of the general law that dividends shall be shared by the stockholders in proportion to their shares of stock. According to the contention of respondents, if Conover had permitted the surplus to remain in the treasury as operating capital or that Smith had successfully resisted Conover's effort to secure a distribution of the profits according to the contract, then Smith could destroy Conover's right to profits by electing to buy Conover's stock, and Conover would be forced to ask for his stock the amount invested by him plus interest. Thus he would lose an amount which, if the business had been exceptionally successful, might be comparable with his investment, simply because the distribution of the profits which the contract required had not been enforced. Such a construction is not tenable and does violence to the plain language of the contract.

[3] In support of their position that the specific language of the contract upon the "buy and sell" feature controls any general language used elsewhere, respondents cite us to Civil Code, section 3534, "particular expressions qualify those which are general," and to *Scudder* v. *Perce,* 159 Cal. 429 [114 Pac. 571], wherein the court says: "When general and specific provisions of a contract deal with the same subject matter, the specific provisions, if inconsistent with the general provisions, are of controlling force. If, therefore, it be said by the general provision

accounts are to be taken and the properties of the partnership, including the book accounts, are to be divided between the partners equally, this must be considered as controlled by the specific provision that upon the payment of $1000 all assets of the partnership, including the book accounts, shall be the property of the defendant.''

The case is not in point as the facts do not parallel the instant case. The Scudder-Perce contract provided that on dissolution of the partnership Perce should pay Scudder $1,000, and that Scudder should transfer to Perce his interest in the furniture, fixtures, and goodwill of the property ''and all gains of said business other than moneys earned and collected.''

[4, 5]  We are in perfect accord with what the court says in that case and with this language used in the opinion, which has special application here: ''The second consideration is that all parts of the contract are to be given effect if this may be done without doing violence to the manifest expressed intent of the parties and that the terms of a contract are to be construed according to the ordinary and usual acceptation of the language, unless an intent that they should be construed otherwise plainly appears.''  [6]  Here we have one article of the contract specially providing for the division of the profits. The profits had already been earned before respondent Smith exercised his option to buy appellant's stock, and appellant's right to these profits cannot be defeated because of the failure or refusal of the directors to declare a dividend in a corporation, which, under the authorities cited, is a mere agency created for the convenience in carrying out the contract and which is a mere corporate fiction. The other article provides that Smith shall have the right to purchase the stock of Conover at par *or at the option* of Conover at a price that will return him the amount invested with interest less dividends already received.

The contract is very plain and each clause can be given effect without doing violence to the others. Article VI gives Conover the right to his profits in the enterprise earned up to the time Smith should exercise his right of purchase. When Smith exercised this right given him under article VIII, Conover was given the option of demanding par for his stock and retaining the profits, which at the

time of the execution of the contract it must have been expected he would have collected before a demand was made upon him by Smith, exercising his right to purchase his stock, or, if it were more advantageous to him, he could demand the amount invested with ten per cent interest less the profits he had received. This clause was evidently inserted in the contract for Conover's benefit as a protection to him should Smith desire his retirement from the business. The learned trial judge in his decision has reversed the conditions and given Smith the right to decide which alternative Conover must choose—has transferred the option from Conover to Smith.

We are of the opinion that appellant is entitled to his proportionate share of the profits earned by the corporation prior to respondent Smith exercising his right to purchase his stock.

The judgment is reversed and the cause remanded, with directions to the trial court to determine the amount of profits to which appellant is entitled, and to award him his proper share.

Knight, Acting P. J., and Cashin, J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 18, 1927.