[Civ. No. 19261. Second Dist., Div. Three. Feb. 3, 1954.]

FRANCIS G. GRANT, Plaintiff and Appellant, v. ANNETTE WEATHERHOLT et al., Respondents; CARRIE E. HERZOG, Defendant and Appellant.

Armond M. Jewell for Plaintiff and Appellant.

Morris Lavine for Defendant and Appellant.

William J. Cusack for Respondents.

SHINN, P. J.—On April 1, 1946, Raymond D. Herzog held a contract for the purchase of 325 acres of mountain land in Palm Springs, Riverside County, for the sum of $25,000. On that date he entered into an agreement with T. E. Weatherholt under and by virtue of which the two became joint adventurers in the purchase of the property, each to have a half interest in the venture. The agreement provided that the purchase price would be raised through a loan on the property or through a syndicate to be organized with capital of $75,000. The property was to be subdivided, improved and sold and it was agreed that the parties would operate as one in the future development and handling of said property. The contract read: "It is finally agreed that both parties hereto will cooperate to the fullest extent for the mutual benefit of both parties in interest." The syndicate was not formed. Mr. Weatherholt drew a check for $25,000 upon an account in which his money and the money of his wife, Annette Weatherholt, was deposited. The money was used to acquire the property, title being taken in the name of Raymond D. Herzog and Carrie E. Herzog, his wife, who signed a note for $25,000, at 6 per cent interest payable $750 or more each third month commencing July 15, 1946, in favor of Annette Weatherholt and they executed a trust deed on the property to a bank as trustee to secure the note. The trust deed was placed of record April 28, 1946. On or about June 18, 1946, Herzog and Weatherholt caused to be organized a corporation, the Palm Springs Holding Corporation, the stock of which was issued, 1,248 shares to Mrs. Weatherholt, 1,248 shares to Mrs. Herzog, and one additional share each to Mrs. Weatherholt, Mrs. Herzog, Mr. Weatherholt and Raymond D. Herzog. Mr. Herzog was made president, and Mr. Weatherholt secretary, of the corporation.

In the month of January, 1947, Herzog approached plaintiff for the purpose of securing money for development of the property and he represented to plaintiff that title to the property was free and clear of encumbrances. Plaintiff agreed to advance, $25,000 for improvement work and on February 7, 1947, plaintiff and Ronald V. Herzog, son of

Raymond D. Herzog, entered into a contract with the corporation by which they contracted to do improvement work, and were to advance $25,000 to be used therein; they were to be paid the cost of the work plus 15 per cent, a portion of which was to be applied toward the purchase of a homesite by each of the contractors. Grant and Ronald V. Herzog were to receive salaries of $500 each per month. Grant advanced in money and services in excess of $31,000. The parties ran out of money and the enterprise came to a standstill. In the meantime nothing had been paid upon account of the note and trust deed held by Mrs. Weatherholt, and on or about July 17, 1951, Notice of Default and Intention to Sell under the trust deed was given on behalf of Mrs. Weatherholt. It was then that Grant first learned that the property was encumbered by a $25,000 trust deed. Raymond D. Herzog died July 17, 1950, and his widow, Carrie Herzog, was appointed administratrix of his estate. This action was brought August 17, 1951.

The complaint sought damages for fraud against Raymond D. Herzog, his wife, the corporation and Mr. and Mrs. Weatherholt. The alleged fraud consisted of the representation made by Herzog, senior, that the property was unencumbered. It was alleged that the representation was made by Herzog as agent for the other parties, that plaintiff was deceived thereby, and otherwise would not have entered into a contract with the corporation or advanced any money. It was also alleged that the $25,000 advanced for purchase of the property was community funds of Mr. and Mrs. Weatherholt; that Mr. Weatherholt acted throughout as the authorized agent of his wife; that he also fraudulently concealed the existence of the trust deed; that Mrs. Herzog and Mrs. Weatherholt were joint adventurers in the enterprise; that they fraudulently concealed from plaintiff the existence of the trust deed, and plaintiff sought relief through cancellation of the trust deed or a judgment subordinating the lien of the trust deed to such amount as might be found due plaintiff. Mrs. Herzog filed a cross-complaint for declaratory relief, an injunction against the sale of the property under the trust deed, and for an accounting of the joint venture, and she also sought cancellation of the note and trust deed. She alleged that Mr. and Mrs. Weatherholt were joint adventurers in the enterprise and that the $25,000 advanced for the purchase of the property was to be paid only out of proceeds of sale of the property.

When the action came on for trial a jury was empaneled and the court ruled that the legal issues would be submitted to the jury and that the court would determine the remaining equitable issues. At the close of the evidence plaintiff filed a second amendment to his first amended complaint in which he alleged that the defendants wilfully and intentionally breached their contract with him in that they failed to bring about sales of property or otherwise secure adequate financing for the development thereof to plaintiff's damage in the sum of $47,912.23.

The jury returned a verdict in favor of plaintiff against T. E. Weatherholt, Annette Weatherholt, Palm Springs Holding Corporation and Carrie E. Herzog individually, and as administratrix of the estate of Raymond D. Herzog, deceased, in the sum of $38,000, together with interest thereon from February 7, 1947.

After the verdict was returned the court made findings upon all the issues in the case and entered a judgment notwithstanding the verdict in favor of the plaintiff for $38,000 and interest against Palm Springs Holding Corporation, Carrie E. Herzog as administratrix of the estate of Raymond D. Herzog, and in favor of Carrie E. Herzog, individually, T. E. Weatherholt and Annette Weatherholt upon the complaint. Judgment was also entered against Carrie Herzog, individually and as administratrix, and in favor of Weatherholt and wife and the corporation on the cross-complaint. Thereafter, upon motion duly made, the court granted a new trial to Palm Springs Holding Corporation on the ground of insufficiency of the evidence. Plaintiff appeals from the judgment, except as to that portion thereof which awarded judgment in his favor against the corporation and Carrie E. Herzog as administratrix, and also from the order granting Palm Springs Holding Corporation a new trial. The corporation filed a cross appeal from the judgment on the verdict granted against it. Carrie E. Herzog, individually and as administratrix, appeals from the judgment.

The issues raised by the pleadings may be summarized as follows: Plaintiff sought damages against Herzog and wife, Weatherholt and wife and the corporation, for fraudulent representations that the property of the corporation was unencumbered, and also damages for breach of contract consisting of the failure of the defendants to finance the completion of the improvements of the tract and to sell a sufficient

amount of the property to enable the corporation to pay the sums due plaintiff under his improvement contract with the corporation. He was claiming that Mrs. Herzog and Mrs. Weatherholt were parties to the joint venture and that the corporation was the alter ego of the individual defendants. He was also claiming that Herzog, in representing that the property was unencumbered, acted as the agent and representative of the other defendants; also that the $25,000 for which a note and trust deed were given in favor of Mrs. Weatherholt was not her separate property, but property of the community, and he sought to have the trust deed cancelled, and in any event that the amount of his expenditures under the improvement contract be declared a lien upon the property superior to the lien of the trust deed. Mrs. Herzog, individually and as administratrix, was making similar contentions with respect to the trust deed. She also contended that Mrs. Weatherholt was a party to the joint venture and that the Palm Springs Holding Corporation was the alter ego of the joint adventurers. She was contending that T. E. Weatherholt had agreed to provide all the financing for the development, subdivision and sale of the property, and that he failed and refused to do so. Claiming her intestate to have been a party to the joint venture she sought a dissolution thereof and an accounting; also cancellation of the note and trust deed and an injunction to enjoin any sale thereunder.

The legal issues consisted of plaintiff's claims for damages based upon said fraudulent representations and the alleged failure of the Weatherholts and the corporation to fulfill their claimed obligation to complete the financing and sell portions of the property. These issues were submitted to the jury.

From the form of the verdict it is apparent that the jury was required to determine whether plaintiff was entitled to a judgment for damages against Weatherholt and wife, the corporation and Carrie E. Herzog, individually and as administratrix. The verdict against all these defendants indicates that facts were found which would render each of said defendants liable, either on the basis of fraud or breach of contract.

In his original complaint plaintiff alleged that he was at all times mentioned a duly licensed general contractor. In his second amended complaint he omitted this allegation but alleged that he and Ronald V. Herzog were acting only as

employees of the corporation, which allegation was denied in the answers. At the time the partnership, consisting of plaintiff and Ronald V. Herzog, entered into the contract with the corporation, neither plaintiff nor Herzog had been licensed by the Contractors State License Board (Bus. & Prof. Code, § 7026.)[1] The work was commenced in March, 1947; plaintiff and Herzog were arrested for being unlicensed, pleaded guilty and obtained a license in June. During the construction work on the road on the property, plaintiff paid Phoenix Mining Company $11,303.91. At the time the work was done Phoenix was unlicensed, but later obtained a license.

The first contention to be considered is that plaintiff is suing on a contract which was void because plaintiff was not at all times during the progress of the work the holder of a contractor's license. It is further contended that since Phoenix Mining Company was unlicensed, payments to that company were voluntary, and cannot be considered in the computation of the sums that were expended by plaintiff. It is our opinion that neither of these contentions is sustainable.

So far as concerns plaintiff's cause of action for damages for alleged breach of contract by the defendants, section 7031, Business and Professions Code,[2] bars the action. The contract recited that plaintiff and Herzog were duly licensed contractors. They were to supervise the work, be responsible for the payment of all bills, were to carry workmen's compensation, and were to receive in payment the cost of the work plus 15 per cent, and each was to accept as part payment a building lot in the subdivision. They were not merely employees, nor were they working exclusively for wages. Plaintiff's contract with the corporation was void. He could not recover on the contract, nor for breach of it, nor for

---

[1] Section 7026. "The term contractor for the purposes of this chapter is synonymous with the term 'builder' and, within the meaning of this chapter, a contractor is any person, who undertakes to or offers to undertake to or purports to have the capacity to undertake to or submit a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith. The term contractor includes subcontractor and specialty contractor."

[2] Section 7031. "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this State for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract."

the value of work done or for moneys expended thereunder. (*Holm* v. *Bramwell*, 20 Cal.App.2d 332 [67 P.2d 114]; *Owens* v. *Haslett*, 98 Cal.App.2d 829 [221 P.2d 252]; *Sheble* v. *Turner*, 46 Cal.App.2d 762 [117 P.2d 23]; *Mansfield* v. *Hyde*, 112 Cal.App.2d 133 [245 P.2d 577].)

■ The fact that plaintiff was unlicensed did not operate to bar him from the prosecution of his cause of action for fraud by which he was induced to enter into the contract with the corporation.

■ The sections of the Business and Professions Code which require the licensing of contractors and declare· the contracts of unlicensed persons to be invalid, and bar actions based thereon, relate only to obligations which arise out of contracts under which express promises are made, and to acts which would normally create an implied obligation to render compensation. ■ An unlicensed person may not recover compensation, the right to which rests upon an express or implied promise which the law denounces as invalid.

The first statute which required a contractor to obtain a license was enacted in 1929 (Stats. 1929, ch. 790), as an amendment of an act, approved March 24, 1923, relating to street improvements. The word "contractor" was defined in section 3 of the act.[3] By Statutes 1931, chapter 578, section 3, section 12 was amended to provide: "No person engaged in the business or acting in the capacity of a contractor as defined by section 3 of this act, shall bring or maintain any action in any court of this state for the collection of compensation for the performance of any act for which a license is required by this act without alleging and proving that such person was a duly licensed contractor at the time the alleged cause of action arose."

Section 12 was amended by Statutes 1935, chapter 499, to read substantially as section 7031, Business and Professions Code reads. ■ The word "compensation," as used in sec-

---

[3] "A contractor within the meaning of this act is a person, firm, co-partnership, corporation, association, or other organization, or any combination of any thereof, who for a fixed sum, price, fee, percentage, or other compensation other than wages undertakes with another for the construction, alteration, repair, addition to, or improvement of any building, highway, road, railroad, excavation or other structure, project, development, or improvement, other than to personalty, or any part thereof; *provided* that the term contractor, as used in this act, shall include subcontractor, but shall not include any one who merely furnishes materials or supplies without fabricating the same into, or consuming the same in the performance of, the work of the contractor as herein defined."

tion 7026 and section 7031, denotes sums claimed as an agreed price, fee or percentage earned by performance, and also sums claimed as the reasonable value of work done under implied contract.

Plaintiff's cause of action for fraud is not "for the collection of compensation for the performance of any act or contract for which a license is required." Plaintiff's right is the outgrowth of the deceit practiced upon him by the defendants. The validity or invalidity of his contract does not affect that right. Proof of the contract under the cause of action for fraud was merely proof of the circumstances under which plaintiff's services were rendered and his money was expended.

Plaintiff's action for fraud is not barred unless by the provision of the above sections of the Business and Professions Code. ▆ The sections should be construed and applied so as to accomplish their purpose of protecting the public from dealings with incompetent or untrustworthy contractors. ▆ The courts will not impose penalties for noncompliance in addition to those that are provided expressly or by necessary implication. The rule *expressio unius exclusio alterius* has application. (*Comet Theatre Enterprises* v. *Cartwright* (C.A.Ninth), 195 F.2d 80; *Norwood* v. *Judd,* 93 Cal.App.2d 276 [209 P.2d 24].) ▆ The sections of the code which shield from liability those who enter into contracts with unlicensed persons do not purport to shield them from responsibility for their own torts, nor do they relate to actions or proceedings except those that are based upon contract liability.

In *Ralph* v. *Lockwood,* 61 Cal. 155, plaintiffs, copartners, who did not file a certificate of partnership required by section 2466 and section 2468 of the Civil Code, were claiming title to a crop of barley by virtue of a contract and lease made to them as lessees. They sued for conversion of the crop and recovered. The defense was that plaintiffs were suing on a contract made in their partnership name in the absence of a certificate, and were therefore barred from maintaining the action until a certificate had been filed. The opinion of the court on that point reads: "Section 2468 of the Civil Code does not apply to torts, and as the action is for conversion of personal property, the plaintiff's rights are unaffected by the provisions of that section." The judgment was affirmed. This case was followed in *Thompson* v. *Byers,* 116 Cal.App. 214 [2 P.2d 496], holding that the licensing

statute did not apply to torts, and pointing out that if the Legislature had intended to include torts it would have done so. *Reeves* v. *First Nat. Bank,* 20 Cal.App. 508 [129 P. 800], held that an action by partners against a bank for damages for defendant's failure to pay certain checks was an action in tort, and was not barred because of the failure of the copartners to have had on file a certificate as required by section 2468, Civil Code. *In re Dennery,* 89 Cal. 101 [26 P. 639], brought in question the right of partners to join in an insolvency petition when they had not filed a certificate as required by the code sections. Speaking of section 2468, the court said (p. 106) : ''It does not by express terms include special proceedings, and the court will not, by intendment, enlarge the inhibition for the purpose of defeating a remedy to which the party otherwise would be entitled.'' Inasmuch as plaintiff's action for fraud is not for the recovery of compensation under the contract or for breach of it, the fact that he was not licensed at all times does not bar his recovery. He does not sue for any act performed by him, but for acts of the defendants which resulted in his being deceived and damaged. For the same reasons the sums paid to Phoenix Mining Company were properly considered as elements of plaintiff's damage.

We shall consider next the judgment notwithstanding the verdict which was entered in favor of Mrs. Weatherholt and Mrs. Herzog individually. Neither of them made any representation to plaintiff, and unless they were parties to the joint venture they were not responsible for the representations that were made by Mr. Herzog. We think it is clear they were not parties to the joint venture. They were not parties to the agreement. The mere fact that they were respectively the wives of Weatherholt and Herzog did not make them parties to the joint venture. There was no evidence whatever that in organizing the joint venture or in the negotiations with plaintiff the husbands were acting as agents of their wives. The implied finding of fraud upon their part had no support in the evidence.

Neither would the wives have been liable for breach of contract unless they were parties to it, even if it had been a valid contract. The contract of plaintiff under which he advanced the improvement money was with the corporation alone, and the wives, who were merely stockholders, had no responsibility for its performance by the corporation. There

was no basis in the evidence for the award of damages against either Mrs. Weatherholt or Mrs. Herzog, individually

It is urged by Mrs. Herzog, as administratrix, that the judgment against her in that capacity must be reversed for the reason that no claim was filed against the estate. (Prob. Code, § 709.) In reply plaintiff states that he "will not urge herein his right to a judgment on the verdict against the respondent/cross complainant Carrie E. Herzog in her capacity as administratrix of the Estate of Raymond D. Herzog, Deceased." We deem this to be consent to a reversal of that part of the judgment, and it will be reversed, without regard to the merits of the objection.

On plaintiff's appeal from the judgment notwithstanding the verdict in favor of T. E. Weatherholt the sole question is whether the verdict against him had substantial support in the evidence. Mr. Grant testified that Raymond D. Herzog represented to him that the property was free of encumbrance, that he believed the representation and upon the strength of it advanced some $38,000 in money and services, for the use and benefit of the corporation. The corporation had no assets other than the land. The improvement work came to a standstill because there was no more money available; the corporation was unable to repay the money which plaintiff had advanced. Its property was subject to the $25,000 trust deed. This was sufficient evidence to support the findings of the jury that plaintiff was deceived to his prejudice and was damaged in the amount of his advancements.

The next question is whether Weatherholt was liable for the fraud of Herzog. The representations of Herzog to Grant were made during the existence of the joint venture, in the interest of the joint adventurers and within the scope of the joint venture. The property which the Weatherholts and Herzogs exchanged for stock in the corporation was improved through use of the money advanced by plaintiff. Although the stock, except for a few shares, was issued in the names of the wives, Herzog and Weatherbolt both received and retained benefits which came to them as joint adventurers and stockholders, through the improvement of the property at plaintiff's expense.

Where one joint adventurer, acting within the scope of the joint venture, and in furtherance of its agreed purposes, is guilty of fraud in procuring benefits which are retained by the joint adventurers, all are liable for the fraud in compensatory damages.

Liability is imposed under elementary principles of agency. (Rest. Agency, §§ 160-162, 257, 258.)

▪ Where the conditions stated above exist the fraud of one partner imposes liability upon his copartners. (*Siebold* v. *Berdine,* 61 Cal.App. 158, 162 [214 P. 655]; *Lewis* v. *McClure,* 127 Cal.App. 439, 449 [16 P.2d 166]; *Russell* v. *Warner,* 96 Cal.App.2d 986 [217 P.2d 43]; 68 C.J.S., § 170, p. 620; 40 Am.Jur., § 193, p. 263.)

In 48 Corpus Juris Secundum, pages 807, 808, it is said of joint ventures and partnerships: "The divergence between the two relations is still very slight, and is difficult of ascertainment in some circumstances. It has been held that a joint venture is in the nature of a partnership, and that it may be regarded as a limited, special, or quasi partnership. The relation of the parties to a joint adventure is so similar to that in a partnership that their rights and liabilities are usually tested by partnership rules, and in numerous decisions it has been broadly held that both joint adventure and partnership are governed by the same rules of law. This is generally true as regards substantial rights, especially those enforceable in courts of equity."

Although it is recognized that there are distinctions between joint ventures and partnerships, they are distinctions of substance. (See *Nelson* v. *Abraham,* 29 Cal.2d 745 [177 P.2d 931], and authorities cited.) Insofar as the relations of joint adventurers, as between themselves and as to third parties, are identical with those of partners, the settled principles applicable to partnerships should control. With respect to the questions before us we think the joint adventurers should be held to the liabilities of partners. Herzog and Weatherholt had the rights and owed the duties of partners in the enterprise. In enlisting the assistance of Grant in the development of the property Herzog was acting under authority conferred by the joint venture agreement. The results of his negotiations and oral promises were known and consented to by Weatherholt. Pursuant to the arrangement with Grant for advancement of the money, Herzog and Weatherholt caused the corporation to enter into the contract with Grant and to issue stock in exchange for the property. It is immaterial that they had the stock issued in equal amounts to their respective wives. It was the stock of the joint adventurers by virtue of the original agreement. The wives took the stock in their names only because their respective husbands, for some reason, preferred not to take it in their

own names. It cannot be questioned that Herzog and Weatherholt received the benefit of the advances made by Grant. It is true that title to the property stood in the name of the corporation but this was under circumstances which warranted the jury in disregarding the corporate entity. This issue was submitted to the jury under appropriate instructions and the implied finding was that the corporation was the alter ego of the joint adventurers, Weatherholt and Herzog. The evidence was sufficient to support this finding. (*Hillman* v. *Hillman Land Co.*, 81 Cal.App.2d 174 [183 P.2d 730]; *Conover* v. *Smith*, 83 Cal.App. 227, 231 [256 P. 835].)

In January 1947 Herzog and Weatherholt entered into a written agreement which recited that they had theretofore entered into a ''partnership agreement'' and by their writing they purported to cancel the former agreement. We have referred to the relationship of the parties as that of joint adventurers because the briefs designate them as such, but, as we have stated, it is immaterial whether they be regarded as joint adventurers, or partners, with respect to the fraud issue, and the same is true as to the alter ego issue.

The dissolution agreement could not relieve the parties from existing liability for fraud, and in its further operations the corporation was the agency of the individuals, its fraud their fraud, and its benefits their benefits.

Although Weatherholt was liable for the fraud of Herzog as a joint adventurer the implied finding that the corporation was the alter ego of Herzog and Weatherholt is merely confirmatory of the latter's liability, since it will be developed in our discussion that the corporation, apart from its alter ego status, had primary liability for the fraud of Herzog.

We conclude that the verdict against T. E. Weatherholt was supported by substantial evidence, and that it was error to enter judgment notwithstanding the verdict in his favor.

After the legal issues had been determined by the jury there remained equitable issues for determination by the court. Both plaintiff and Mrs. Herzog attacked the validity of the trust deed held by Mrs. Weatherholt. They contended that she was one of the joint adventurers, that the funds which she advanced were community funds, that in all matters her husband acted as her authorized agent, and that the trust deed indebtedness was to be paid only from proceeds of the sales of land. These contentions related to the claims

that were addressed to the equity jurisdiction of the court and to issues that were reserved for decision by the court. Specific findings were made upon all these issues in favor of Mrs. Weatherholt. It was found that the funds advanced by Mrs. Weatherholt were her separate property. There was substantial evidence to justify that finding. Although the check was drawn by Mr. Weatherholt on a bank account in which both separate and community funds were deposited from time to time, there was undisputed evidence that Mrs. Weatherholt had deposited in the account some $56,000 derived from the sale of her separate property, and that certain portions of these sums were disbursed by her husband only as she directed. The court properly concluded that Mrs. Weatherholt acquired and held the note and trust deed as her separate property. As to the other findings upon the issues which related to the liability of Mrs. Weatherholt for the sums advanced by plaintiff, and to the validity and enforceability of her trust deed, it is sufficient to say that we have examined the evidence and find it sufficient to support the findings. Mrs. Weatherholt never conversed with plaintiff, she was not a party to the joint venture nor to the contract under which plaintiff made his advancements. There was evidence that the stock she held was considered to be additional security for her loan. The fact that this was her husband's stock also indicated that she was loaning her separate funds. If, as contended, she made no demands for payment between June, 1947, and July 17, 1951, it was not shown that she had ever been advised of plaintiff's ignorance of the existence of the trust deed, or that she had any duty to inform him of its existence. There was no basis in the evidence for a claim that she should be held estopped to assert that her trust deed was a lien on the property superior to any rights possessed by plaintiff or Mrs. Herzog, individually or as administratrix.

We are unable to see wherein Mrs. Herzog, either individually or as administratrix, is prejudiced by the judgment on her cross-complaint, insofar as it denies her a decree dissolving the joint venture and an accounting. As we have said, she was not a party to the joint venture. All the assets of the joint venture were vested in the corporation. The joint venture had been dissolved. We must assume, as plaintiff does in his briefs, that the property has been sold under the trust deed, either to Mrs. Weatherholt or a third party. If the property sold for more than the sum due ($25,000, plus

interest at 6 per cent from April 15, 1946) the corporation will have received the amount of the excess. Mrs. Herzog has the rights of a stockholder. It must be presumed that they will be respected, and that there will be no occasion for intervention by the court. The fact that the corporate entity has been disregarded for some purposes does not warrant its being disregarded for all purposes. Whatever redress is due Mrs. Herzog, either individually or as administratrix, may be had within the corporation. If the property brought no more than the amount of the indebtedness against it, the corporation is without assets, nor would there be any assets, other than corporate stock, as outgrowth of the joint venture.

 It was error to grant the corporation's motion for a new trial. The jury impliedly found, upon substantial evidence, that Herzog made false representations, as charged, that plaintiff was deceived thereby and was damaged. Herzog was president of the corporation, acting within the scope of his authority and duty to accomplish the improvement of the property and to obtain needed financing. The corporation benefited to the extent of plaintiff's loss. That liability of the corporation existed under these facts is self-evident. Judgment against it was properly entered upon the verdict, and its motion for a new trial should have been denied.

Since the order granting the corporation a new trial is to be reversed, the judgment against it will be reinstated, and its appeal from the judgment is to be considered. For the reasons stated, there is no merit in its appeal.

By the verdict and the judgment against the corporation and Carrie E. Herzog as administratrix, interest on the amount of the judgment was allowed from February 7, 1947. Plaintiff consents that the interest award may run from September 30, 1949, instead of from the earlier date.

The Weatherholts and the corporation contend the court erred in refusing their offer of the original complaint in evidence, and in denying their motions to compel plaintiff to elect between the cause of action for equitable relief and the cause of action for damages for fraud, and their motion to dismiss the latter cause of action. They suggest no reason for their offer of the original complaint in evidence nor do they state that they were prejudiced by the ruling. We see no inconsistency, or reason for an election,

between the cause of action for damages and the claim that any judgment that might be rendered in favor of plaintiff should be given priority over Mrs. Weatherholt's trust deed. There is no merit in the contention that the cause of action for fraud should have been dismissed.

We mention these claims of erroneous rulings for the reason that if they were erroneous, and if they improperly affected the verdict to the prejudice of T. E. Weatherholt and the corporation, there should be a retrial of the fraud issue as to those defendants. The rulings were not erroneous and there is no occasion for a retrial.

The judgment is reversed as to T. E. Weatherholt with instructions to enter judgment in favor of plaintiff against him for $30,888.24, with interest from September 30, 1949. The order granting Palm Springs Holding Corporation a new trial is reversed and the judgment as against that defendant is modified so as to award plaintiff the principal sum of $30,888.24 and interest from September 30, 1949. The judgment insofar as it is against Carrie E. Herzog, as administratrix of the estate of Raymond D. Herzog, deceased, is reversed; insofar as it is in favor of Carrie E. Herzog individually, and Annette Weatherholt, it is affirmed. The judgment insofar as it is in favor of the cross-defendants Annette Weatherholt, T. E. Weatherholt, Palm Springs Holding Corporation and Citizens National Trust and Savings Bank of Los Angeles, as trustee, on the cross-complaint of Carrie E. Herzog, individually and as administratrix, is affirmed. Plaintiff shall recover costs of appeal only from T. E. Weatherholt and Palm Springs Holding Corporation; Annette Weatherholt and Carrie E. Herzog, individually and as administratrix, are allowed no costs of appeal.

Wood (Parker), J., and Vallée, J., concurred.

Petitions for a rehearing were denied February 26, 1954. Plaintiff and appellant's, defendant and appellant's and respondents' petitions for a hearing by the Supreme Court were denied March 31, 1954. Carter, J., and Spence, J., were of the opinion that the petitions should be granted.