954 F.2d 727
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re David W. GIBSON; Michael J. Gibson, Debtors.
Norman A. HARRIS; Sandra G. Harris, Plaintiffs-Appellees,
v.
David W. GIBSON; Michael J. Gibson, Defendants-Appellants.
 No. 90-56382.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 5, 1991.*
Decided Dec. 19, 1991.
Order Amending Opinion Feb. 5, 1992.
 
 Before PREGERSON, CANBY and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Debtors Mr. and Mrs. Gibson appeal the district court's grant of summary judgment ruling that the Gibsons' debt was not dischargeable in bankruptcy.
 
 
 3
 We review a district court's grant of summary judgment de novo. Kruso v. ITT Corp., 872 F.2d 1416, 1421 (9th Cir.1989); State Farm Fire and Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir.1989).
 
 
 4
 This case, which is before this court on its fourth appeal, involves a real estate deal gone awry. In 1980, the Harrises sold their California home to the Gibsons, who were members of a joint venture, Waterfront Development Associates. The Harrises negotiated the sale of their property with Kelly Snow, who was also a member of the joint venture. The purpose of the joint venture was to improve and resell waterfront property. A non-revocable trust fund of $60,000 was established in the name of Waterfront Development Associates ("Waterfront Development") to cover the cost of improvements to the Harris home. Snow had authority to write checks on behalf of the joint venture. Under the terms of the sale, Snow apparently agreed that either the Gibsons or the joint venture would assume the Harrises' outstanding deeds of trust on the property.
 
 
 5
 The Harrises eventually discovered that rather than their home being improved, substantial parts of their property were demolished. Moreover, neither the Gibsons nor Waterfront Development assumed the deeds of trust. Finally, the Harrises discovered that the $60,000 trust fund was completely depleted, apparently applied to the now floundering joint venture.
 
 
 6
 The Harrises brought suit in Orange County Superior Court alleging fraudulent conduct and willful destruction of their property. The superior court entered default judgment in favor of the Harrises. To protect their judgment, the Harrises filed and obtained an involuntary Chapter 11 petition against the Gibsons.[1]
 
 
 7
 We affirm the district court on the basis of 11 U.S.C. § 523(a)(6), willful and malicious injury, rather than the section 523(a)(2), false pretense, false representation, or actual fraud, relied upon by the district court.[2] In reviewing grants for summary judgment, we may affirm on grounds other than those chosen by the district court if there is support in the record. Suydam v. Reed Stenhouse of Washington, Inc., 820 F.2d 1506, 1508 (9th Cir.1987). In this case, The parties argued the applicability of this section to the district court and presented pertinent evidence. See Memorandum of Points and Authorities in Support of Motion for Summary Judgment, ER at 23-27.
 
 
 8
 Mr. Harris' declaration states, and the Gibsons do not dispute, that the joint venture in which the Gibsons participated had:
 
 
 9
 removed the asphalt driveway, removed all of the carpeting, drapes, louvers and patio glass, security fencing, light fixtures and appliances, solid copper gas lights and seaward patio enclosure walls which protected the property from access to the sea. He [Gibson's agent] had removed the bathroom fixtures, the electronic security system and housewide intercom, and all landscaping leaving the grounds totally barren.
 
 
 10
 Harris Declaration, p 34.
 
 
 11
 Mr. Harris further states that "[t]he new projected improvements far exceeded the $60,000 construction budget that I was told would be needed." Id. at p 35. By taking the Harrises' property, conducting improvements far in excess of those contemplated, and imperilling the Harrises' security interest much more than the Harrises expected, the Gibsons' agent, Snow, willfully committed a wrongful act that harmed the Harrises.
 
 
 12
 Specific intent to injure is not a requirement of section 523(a)(6). See In re Cecchini, 780 F.2d 1440, 14442-43 (9th Cir.1986). Thus the Gibsons' argument that there could be no intent to injure because they themselves had put in $600,000 in the project is irrelevant. Also, the fact that Snow, rather than the Gibsons, conducted the demolition does not help the Gibsons because Snow was acting as their agent. Under California partnership law, the members of a joint venture are liable for the torts committed by other members of the joint venture. Cal.Corp.Code § 15013. Cahill Bros. Inc., v. Clementina Co., 208 Cal.App.2d 367, 25 Cal.Rptr. 301. (1962); Grant v. Weatherholt, 123 Cal.App.2d 34, 45, 266 P.2d 185 (1954). The Gibsons acknowledge that Snow acted on behalf of the joint venture in his negotiations with the Harrises for the sale of the Harris home. Accordingly, the Gibsons are liable for the malicious injury of their joint venture partner.
 
 
 13
 Gibson's debt is not dischargeable under section 523(a)(6). The district court's decision is AFFIRMED.
 
 ORDER
 
 14
 Plaintiff-Appellee's motion to strike footnote from the Court's Memorandum disposition is granted. Footnote 1 on page 2 is hereby deleted from the Memorandum disposition filed December 19, 1991.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because the Gibsons did not assume the deeds of trust, the Harrises eventually lost their property through foreclosure to a senior lienholder
 
 
 [2]
 Section 523(a)(2) requires a finding of scienter which has not been established in this case. See In re Rubin, 875 F.2d 755, 759 (9th Cir.1989). Snow, the Gibsons' agent, promised the Harrises certain safeguards, but nothing in the Harrises' declarations concretely suggest that the statements were false when made. See Harris Declaration at p 43 (stating in conclusory fashion "[j]udging from the pattern of events, it is clear to me that GIBSON'S representations were false from their inception.")