[No. S015248. Jan. 24, 1991.]

HYDROTECH SYSTEMS, LTD., Plaintiff and Appellant, v.
OASIS WATERPARK et al., Defendants and Respondents.

**COUNSEL**

Sanger & Stein and Rick M. Stein for Plaintiff and Appellant.

Schlecht, Shevlin & Shoenberger, John C. Shevlin, Alvarado, Rus & McClellan and Joel S. Miliband for Defendants and Respondents.

**OPINION**

EAGLESON, J.*—Section 7031 of the Business and Professions Code[1] states that one may not sue in a California court to recover "compensation" for "any act or contract" that requires a California contractor's license, unless one "alleges and proves" he was duly licensed at all times during the

---
*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

[1] All further statutory references are to the Business and Professions Code unless otherwise indicated.

performance. We granted review to decide two questions. The first is whether section 7031 permits an unlicensed nonresident to sue upon an "isolated transaction" in California where "exceptional circumstances" exist, even though there was no substantial compliance with California's licensing law. The second—an issue of potentially broad importance—is whether section 7031 bars an unlicensed contractor's *fraud* action against the person for whom the work was done.

We conclude, as did the Court of Appeal, that section 7031 contains no implied exception for foreign entities, isolated transactions, or other "exceptional" circumstances. We also hold, contrary to the Court of Appeal, that the statute bars an unlicensed contractor's claim for fraud when the primary deceit alleged is a false promise to pay, and the damages primarily consist of, or are measured by, the price or value of the work and materials furnished. Any other result would circumvent the clear statutory policy of deterring unlicensed contract work. We therefore affirm in part and reverse in part the decision of the Court of Appeal.

## FACTS

Plaintiff Hydrotech Systems, Inc. (Hydrotech), a New York corporation, manufactures and installs patented equipment designed to simulate ocean waves. Hydrotech claims that its product, and its skills at installing and maintaining the equipment are unique. Defendant Oasis Waterpark (Oasis), a California corporation, owns and operates a water-oriented amusement park in Palm Springs. Defendant Wessman Construction Company, Inc. (Wessman), was Oasis Waterpark's general contractor for construction of the park.

In July 1985, Hydrotech contracted with Wessman to design and construct in the park a 29,000-square-foot "surfing pool" using Hydrotech wave equipment. The total contract price was $850,000. Wessman was entitled to hold back specified portions of this amount pending satisfactory completion and operation of the pool.

Hydrotech later sued Wessman and Oasis Waterpark and its principals (collectively Oasis). Hydrotech's suit claimed that more than $110,000 in "retainage" amounts were still being withheld although the pool had long since been completed and was performing as specified. The second amended complaint, filed November 29, 1988, asserted claims against all defendants for fraud, breach of implied contract, and money due and owing, and against Wessman for breach of written contract. The complaint also asserted that full payment had been made for Hydrotech's construction services, and that the unpaid balance was only for equipment and materials.

In its fraud count, Hydrotech alleged as follows: Because it was concerned about licensing problems, Hydrotech wished only to sell and deliver its equipment and to avoid involvement in design or construction of the pool. However, Oasis insisted that Hydrotech's unique expertise in design and construction was essential. To induce Hydrotech to contract for these services, and "in response to repeated queries by Hydrotech," defendants promised that Wessman would arrange for a California contractor to "work with" Hydrotech on any construction activities which required a California license. Defendants also promised to pay in full for Hydrotech's wave equipment and for "associated equipment and services." In reasonable reliance on these promises, which defendants never intended to honor, Hydrotech furnished equipment and services in full compliance with its contract. Had Hydrotech known defendants' promises were false when made, it would not have performed under the contract, and therefore suffered damage according to proof.

Defendants demurred on grounds, inter alia, that the complaint failed to allege Hydrotech possessed a California contractor's license. Hydrotech conceded it had no California license. However, Hydrotech asserted that it sought only unpaid amounts for sale of equipment, for which a license was not required.[2] In the alternative, Hydrotech claimed that application of section 7031 was unnecessary and unjust because Hydrotech possesses unique expertise in its field and provided construction services only at its customer's insistence. Hydrotech also argued that section 7031 does not bar tort actions for fraud.

The trial court sustained Wessman's demurrer to the written-contract count but granted Hydrotech leave to amend. The demurrers to all other causes of action in Hydrotech's complaint were sustained without leave to amend. The trial court entered an order dismissing all defendants save Wessman from the action.

■ ■■ ■ Hydrotech appealed the dismissal order.[3] It argued first that the protective purposes of the licensing law are not served by applying section 7031 to a nonresident who subcontracted at its customer's specific request to provide unique construction skills in an "isolated" California transaction. Hydrotech also repeated its contention that section 7031 does not bar claims of fraudulent inducement to enter a construction contract.

---

[2] Hydrotech has not renewed this contention on appeal.

[3] Because Wessman was not dismissed from the suit, it is not a party to the appeal. There is no doubt, of course, that an order dismissing fewer than all defendants from an action is a "final judgment" as to them, and is thus appealable. (Code Civ. Proc., § 904.1, subd. (a); *Justus v. Atchison* (1977) 19 Cal.3d 564, 568 [139 Cal.Rptr. 97, 565 P.2d 122]; *Seidner v. 1551 Greenfield Owners Assn.* (1980) 108 Cal.App.3d 895, 901-902 [166 Cal.Rptr. 803]; *Tinsley v. Palo Alto Unified School Dist.* (1979) 91 Cal.App.3d 871, 880 [154 Cal.Rptr. 591].)

The Court of Appeal rejected the former argument but accepted the latter. It reversed that portion of the trial court's judgment which dismissed Hydrotech's fraud count, but affirmed the dismissal of Hydrotech's complaint in all other respects.

Hydrotech sought review on the "isolated transaction" issue, and defendants sought review on the fraud question. We granted both petitions. ■ ■ ■ ■ As we explain, defendants' contentions have merit, but Hydrotech's do not.[4]

## DISCUSSION

1. *Section 7031 applies despite the "exceptional circumstances" of this transaction.*

■ Hydrotech renews its contention that the "exceptional circumstances" of its dealings with Oasis make application of section 7031 unnecessary and unjust. Hydrotech points to its allegations that it reluctantly provided construction services on a one-time basis only because Oasis solicited its specialized wave-generation expertise, which was available nowhere else. Hydrotech argues that the "isolated" provision of such specialized services by a mere subcontractor should be deemed exempt from section 7031. The law, however, is otherwise.

Section 7031 states clearly that, with exceptions not relevant here, "[n]o *person* engaged in the business *or acting in the capacity* of a contractor, may *bring or maintain any action*" in a California court to recover "compensation for the performance of any act or contract for which a [contractor's] license is required . . . without alleging and proving" that he or she "was a duly licensed contractor at all times during the performance of [the] act or contract . . . ." (Italics added.)

---

[4] Oasis demurred specially on the additional ground that the complaint failed to show Hydrotech's capacity to sue because it did not allege that Hydrotech, as a foreign corporation conducting "intrastate business," had obtained the required "certificate of qualification" from the Secretary of State. (Corp. Code, §§ 2105, 2203, subd. (c).) The Court of Appeal concluded it did not have to reach the qualification issue because it had held that Hydrotech's contract claims were barred in any event by section 7031. This analysis overlooks the fact that the appellate court did exempt Hydrotech's fraud claim from section 7031. Nonetheless, the qualification issue is not presented by this appeal. Unless the governing statute states otherwise, a complaint need not allege the plaintiff's capacity to sue. If lack of capacity does not appear on the face of the complaint, it cannot be raised by demurrer, but is a special plea in abatement. (See, e.g., *Traub Co.* v. *Coffee Break Service, Inc.* (1967) 66 Cal.2d 368, 370 [57 Cal.Rptr. 846, 425 P.2d 790]; *Haley & Co.* v. *McVay* (1924) 70 Cal.App. 438, 440 [233 P. 409]; 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 1055-1056, pp. 470-471.) Hydrotech's complaint does not disclose on its face that Hydrotech has conducted "intrastate business" as defined by statute (see Corp. Code, § 191, subd. (c)(8)), or that it failed to obtain any required certificate. Thus, no further discussion of the qualification issue is warranted.

Section 7026 provides that, for purposes of the license requirements, "a contractor is *any person*, who undertakes to or offers to undertake to . . . , or does himself or by or through others, construct . . . any . . . structure, project, development or improvement, or to do any part thereof, . . . whether or not the performance of [such] work . . . involves the addition to or fabrication into any [such] structure, project, development or improvement . . . of any material or article of merchandise. The term contractor includes subcontractor and specialty contractor." (Italics added.) The numerous express exemptions from the licensing law (§ 7040 et seq.) do not include foreign contractors, isolated transactions, or "unique" building services and capabilities.

■    The purpose of the licensing law is to protect the public from incompetence and dishonesty in those who provide building and construction services. (*Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141, 149-150 [308 P.2d 713].) The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business. (*Ibid.*; *Conderback, Inc.* v. *Standard Oil Co.* (1966) 239 Cal.App.2d 664, 678-679 [48 Cal.Rptr. 901].)

Section 7031 advances this purpose by withholding judicial aid from those who seek compensation for unlicensed contract work. The obvious statutory intent is to discourage persons who have failed to comply with the licensing law from offering or providing their unlicensed services for pay.

Because of the strength and clarity of this policy, it is well settled that section 7031 applies despite injustice to the unlicensed contractor. "Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business *outweighs any harshness between the parties*, and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of this state. [Citation.] . . ." (*Lewis & Queen, supra*, 48 Cal.2d at p. 151, italics added; see also *Brown* v. *Solano County Business Development, Inc.* (1979) 92 Cal.App.3d 192, 198 [154 Cal.Rptr. 700]; *Rushing* v. *Powell* (1976) 61 Cal.App.3d 597, 605 [130 Cal.Rptr. 110].)

■    Hydrotech concedes that it had no California license, yet seeks contract compensation for activities which required such a license. It simply urges that California courts have recognized "exceptional circumstances" in which literal application of section 7031 would not further the purposes of the licensing law.

However, the authorities Hydrotech cites all relate to the well-established doctrine of *substantial compliance*. Under this rule, a contractor was not

barred from a just recovery if his licensure was defective *only in form* and the defendant had received the "full measure" of protection intended by the Legislature. (E.g., *Asdourian* v. *Araj* (1985) 38 Cal.3d 276, 282-289 [211 Cal.Rptr. 703, 696 P.2d 95]; *Latipac, Inc.* v. *Superior Court* (1966) 64 Cal.2d 278 [49 Cal.Rptr. 676, 411 P.2d 564]; *Gatti* v. *Highland Park Builders, Inc.* (1946) 27 Cal.2d 687 [166 P.2d 265].)

Such is not the case here. The protective purposes of the licensing law cannot be satisfied in full measure unless the "continuing competence and responsibility" of those engaged in the work for which compensation is sought have been officially examined and favorably resolved. (See, e.g., *Asdourian, supra*, 38 Cal.3d at pp. 285-289.) Hydrotech does not state that it ever sought or obtained any such favorable official determination of its qualifications, or those of its agents involved in the pool construction. There is no basis for an inference that the law's full protective purposes were served despite the entire absence of necessary licensure. Hence, Hydrotech has not alleged its "substantial" compliance with the licensing law.[5]

Hydrotech claims the law's interests in competence and public protection were not disserved in this case because its agreement to design and construct the surfing pool for Oasis was an "isolated" California transaction. However, as the Court of Appeal observed, "It is manifest that the concern for the public inherent in section 7031 is just as applicable to a project done by an out-of-state contractor with few jobs in California as to a project done by a California contractor who performs only one job in California before going out of business." That Hydrotech's activities in California were "isolated" is not clear from the pleadings, but even if they were, there is no implied exception for "isolated" transactions by foreign contractors. (Cf. *Power City Communications, Inc.* v. *Calaveras Telephone Co.* (E.D.Cal. 1968) 280 F.Supp. 808 [§ 7031 bars federal diversity suit by Washington contractor for value of unlicensed California work].)

Hydrotech also begs the question by suggesting that Oasis' need for its unique skills should exempt it from section 7031. As noted, the licensing law achieves its protective purpose by requiring that a contractor's competence and qualifications, however unique, be examined and certified by the expert agency charged with the law's enforcement.

Hydrotech's "reluctance" to engage in design and construction activities, and Oasis' insistence that it do so, are also irrelevant. Perhaps Hydrotech's

---

[5] Significantly, after the contract here at issue was made and performed, the Legislature concluded that the judicial doctrine of substantial compliance does *not* adequately serve the protective purposes of section 7031. In 1989, the Legislature amended section 7031 to provide that the substantial-compliance rule "shall not apply to this section." (§ 7031, subd. (d); Stats. 1989, ch. 368, § 1, No. 4 Deering's Adv. Legis. Service, pp. 1262-1263.)

good faith alters the balance of equities in its favor. As we have seen, however, the deterrent purpose of section 7031 outweighs any harshness in a particular case.[6]

■ Finally, we dismiss Hydrotech's claim that the law's protective purpose was served because Hydrotech acted only as a subcontractor and did not hold itself out to the public. Subcontractors are governed as such by the licensing law. (§ 7026.) Both owners and general contractors are entitled to protection against illegal subcontract work by unlicensed persons. Hence, an unlicensed subcontractor may not recover compensation for his work from either the owner or the general contractor. (*Lewis & Queen, supra,* 48 Cal.2d at pp. 152-154; see *Pickens* v. *American Mortgage Exchange* (1969) 269 Cal.App.2d 299, 302 [74 Cal.Rptr. 788].)

We therefore conclude, as did the Court of Appeal, that Hydrotech has alleged no "exceptional circumstances" which would exempt it from the operation of section 7031.

2. *Section 7031 bars Hydrotech's fraud claim.*

The Court of Appeal accepted Hydrotech's alternative claim that even if section 7031 eliminates contractual and quasi-contractual claims seeking "compensation" for unlicensed work, it does not bar Hydrotech's recovery of *tort damages* arising from defendants' *fraud* which induced Hydrotech to contract and perform. Defendants assert that the Court of Appeal thus erred. We agree.

■ Regardless of the equities, section 7031 bars all actions, however they are characterized, which effectively seek "compensation" for illegal unlicensed contract work. (*Lewis & Queen, supra,* 48 Cal.2d at pp. 150-152.) Thus, an unlicensed contractor cannot recover either for the agreed contract price or for the reasonable value of labor and materials. (See *Davis Co.* v. *Superior Court* (1969) 1 Cal.App.3d 156, 159 [81 Cal.Rptr. 453]; *Grant* v. *Weatherholt* (1954) 123 Cal.App.2d 34, 41-42 [266 P.2d 185].) The statutory prohibition operates even where the person for whom the work was performed knew the contractor was unlicensed. (*Pickens, supra,* 269 Cal.App.2d at p. 302; *Cash* v. *Blackett* (1948) 87 Cal.App.2d 233 [196 P.2d 585].)

---

[6] Again, the Legislature recently underscored its insistence on a strict application of section 7031 despite the balance of equities. The 1989 amendments make clear that an unlicensed contractor may not recover either "in law or equity," and that suit is barred "regardless of the merits of the cause of action . . . ." (§ 7031, subd. (a), as designated and amended by Stats. 1989, ch. 368, § 1, No. 4 Deering's Adv. Legis. Service, pp. 1262-1263.)

It follows that an unlicensed contractor may not circumvent the clear provisions and purposes of section 7031 simply by alleging that when the illegal contract was made, the other party had no intention of performing. Section 7031 places the risk of such bad faith squarely on the unlicensed contractor's shoulders. "Knowing that they will receive no help from the courts *and must trust completely to each other's good faith*, the parties are less likely to enter an illegal arrangement in the first place. [Citations.]" (*Lewis & Queen, supra,* 48 Cal.2d at p. 150, italics added.)

■ Hydrotech alleges that it was induced to enter and perform an illegal contract by a false promise to pay; that it would not have performed had it known the promise was false when made; and that it therefore suffered damage "according to proof." The complaint states no facts suggesting that the "damage" to be proven and recovered is anything other than that asserted elsewhere in the complaint—i.e., the unpaid contract balance or its quantum meruit equivalent.

In sum, Hydrotech proposes that defendants' unenforceable promise to pay for illegal work is actionable because defendants made the promise in bad faith. Such transparent pleading cannot be used to avoid section 7031.

The Court of Appeal concluded that disallowance of fraud claims like Hydrotech's would *contravene* the protective policies of the licensing law by encouraging professional contractors such as Wessman to seek out unlicensed subcontractors, secure in the knowledge that the work obtained would not have to be compensated. Justice Broussard expresses similar concerns that such a result would encourage the cheating of unlicensed contractors. (Conc. and dis. opn. of Broussard, J., *post,* at pp. 1003, 1006, 1008.) We are not persuaded, however. A general contractor may be disciplined for subcontracting with knowledge that the subcontractor is unlicensed. (§ 7118.) Moreover, the unusual circumstances of this case aside, it is unlikely that a rational general contractor would intentionally risk liability for claims that the subcontractor's unlicensed subcontractor had performed substandard work.

In any event, the statutory disallowance of claims for payment by unlicensed subcontractors *is intended to deter such persons from offering their services, or accepting solicitations of their work.* That policy applies regardless of whether the other party's promise to pay for the work was honest or deceitful.

Hydrotech suggests that the allowance of fraud claims would not nullify *the* protective purposes of section 7031 because, in many cases, unlicensed contractors would not be able to prove that the promise to pay was false

when made, or that reliance on the fraudulent promise was "justified." (See, e.g., *Tenzer* v. *Superscope, Inc.* (1985) 39 Cal.3d 18, 30 [216 Cal.Rptr. 130, 702 P.2d 212].) The point, however, is that the deterrent and protective purposes of section 7031 preclude recovery even when the person who solicited the unlicensed work *did* act in bad faith. (See *Lewis & Queen, supra*, 48 Cal.2d at p. 150.) In other words, the falsity of the promise to pay is irrelevant, and the unlicensed contractor will not be heard to say that he "reasonably" relied upon it.[7]

Hydrotech relies heavily on three Court of Appeal decisions suggesting in particular contexts that section 7031 does not bar an unlicensed contractor's claims for fraud. We are not persuaded that those cases control our ruling here.

In *Grant* v. *Weatherholt, supra*, 123 Cal.App.2d 34, owners of undeveloped land persuaded plaintiff, who was not a licensed contractor, to invest in a development venture. Plaintiff advanced funds, performed improvement work, and furnished materials, based on promises that his compensation would be credited toward the purchase price of a homesite. The owners had represented that the land was free of encumbrances, though in fact it was subject to a $25,000 deed of trust. When the deed of trust was foreclosed, plaintiff sued for breach of contract and also sought tort damages for defendants' false representation of the state of title.

The Court of Appeal dismissed the contractual count but upheld the fraud claim. The court declared that section 7031 bars only claims "based upon contract liability" and does not shield persons who contract with unlicensed contractors from responsibility for their own torts. (123 Cal.App.2d at p. 43.) In the *Grant* court's view, plaintiff's fraud cause of

---

[7] In *Tenzer, supra*, this court held that an unlicensed finder of real estate could sue in fraud upon oral promises of a finder's fee, even though his contractual claim was barred by the statute of frauds. (See former Civ. Code, § 1624, subd. 5, now § 1624, subd. (d).) Among other things, we reasoned that an unlicensed person, *insofar as he seeks compensation for activities which require no license*, should not be held rigidly to constructive knowledge that a finder's fee agreement must be in writing. (39 Cal.3d at pp. 27-28; compare *Philippe* v. *Shapell Industries* (1987) 43 Cal.3d 1247, 1259-1264 [241 Cal.Rptr. 22, 743 P.2d 1279] [*licensed* broker barred from asserting equitable theory to enforce oral commission agreement].) We also concluded in *Tenzer* that a statute designed to prevent fraud should not be applied to encourage it, and that the difficulties of proving fraud would prevent nullification of the requirement of a written agreement. (39 Cal.3d at pp. 28-31.) *Tenzer* is no basis for a determination that unlicensed contractors may sue for fraud. The protective purposes of the licensing law would be nullified if unlicensed contractors were not held to knowledge of its requirements. Moreover, while the statute of frauds addresses only the *formality* of covered agreements, section 7031 seeks to deter *any* compensated work by an unlicensed contractor. Indeed, *Tenzer* itself distinguished the situation where an unlicensed person seeks recovery for activities requiring a license. (39 Cal.3d at p. 31.)

action sought recovery not "for any act performed by him, but for acts of the defendants which resulted in his being deceived and damaged . . . ." (*Id.*, at p. 44.) Among the "damages" recoverable, the court concluded, were the "money and services" plaintiff had advanced in reliance on the false representation. (*Id.*, at pp. 44-45.)

In situations similar to *Grant*'s, two other Courts of Appeal have also upheld fraud claims by unlicensed contractors. In *Brunzell Constr. Co.* v. *Barton Development Co.* (1966) 240 Cal.App.2d 442 [49 Cal.Rptr. 667], a contractor licensed only in Nevada agreed to construct an apartment building on defendants' California property in return for cash and notes. Defendants and the contractor planned a joint venture to own and operate the building. The contractor was to invest in the venture by surrendering some of its notes for the contract price. After the contractor incurred preliminary expenses, but before construction actually began, defendants sold the land. The contractor sued for anticipatory breach and for fraud, alleging that defendants had concealed the sale negotiations. The court rejected the contractual claims as barred by section 7031. However, citing *Grant*, the Court of Appeal ruled that if plaintiff had been induced to enter an arrangement defendants never intended to perform, a claim for fraud would lie. "In such case, plaintiff's [anticipatory] expenditures would serve as a measure of compensatory damages . . . , although not recoverable as compensation under the contract . . . ." (P. 446.)

*Pickens* v. *American Mortgage Exchange, supra*, 269 Cal.App.2d 299, presented facts almost identical to those in *Grant*. Plaintiff, an unlicensed contractor, alleged he changed his residence and did remodeling work on defendants' property in reliance on promises that he would have an option to buy the property and that his labor and expenses would be credited against the purchase price. According to plaintiff, defendants told him the property was encumbered by a $30,000 trust deed but failed to mention an additional $25,000 encumbrance; they also promised to pay but never intended to do so. Relying on *Grant*, the Court of Appeal held that these omissions and misrepresentations, if proved, would support a fraud claim not barred by section 7031. (Pp. 303-304.)

Dicta in these decisions suggest that tort damages are not prohibited "compensation," and that section 7031 is inapplicable whenever the unlicensed contractor asserts he was induced to do illegal work by "fraudulent" promises or representations. Taken out of context, such a rule is naive,

overbroad, unsupported by the authority cited,[8] and impossible to reconcile with our reasoning in *Lewis & Queen, supra,* 48 Cal.2d 141.[9]

Nonetheless, we stop short of disapproving *Grant, Brunzell,* and *Pickens* insofar as they might apply to this case. The Legislature amended section 7031 several times between 1954, the year *Grant* was decided, and 1986, the year Hydrotech apparently finished its unlicensed work for Oasis. During that time, however, the Legislature expressed no disagreement with this line of decisions. The Legislature's inaction is some indication that it accepted existing judicial limitations on section 7031. (See, e.g., *Wilkoff* v. *Superior Court* (1985) 38 Cal.3d 345, 353 [211 Cal.Rptr. 742, 696 P.2d 134]; *People* v. *Hallner* (1954) 43 Cal.2d 715, 719 [277 P.2d 393].)

We conclude, however, that *Grant* and its progeny are properly interpreted in the context of their particular facts. In each case, the plaintiff's involvement as an unlicensed contractor was incidental to the overall agreement or transaction between the parties. By the same token, the primary fraud alleged in each case was external to the arrangement for construction work as such, and was thus unrelated to any protective concern of the licensing law. Under these extraordinary circumstances, the Courts of Appeal understandably concluded that the peripheral involvement of unlicensed contract work did not shield defendants from *all* tort liability.

---

[8] In support of its premise that licensing statutes do not bar tort claims by the unlicensed person, *Grant* cited *In re Dennery* (1891) 89 Cal. 101 [26 P. 639], *Ralph* v. *Lockwood* (1882) 61 Cal. 155, *Thompson* v. *Byers* (1931) 116 Cal.App. 214 [2 P.2d 496], and *Reeves* v. *First Nat. Bank* (1912) 20 Cal.App. 508 [129 P. 800]. None of those cases construed section 7031, however. Rather, all were concerned with the statute barring suit by a business on its contracts or transactions under a fictitious name, until a fictitious-name certificate has been obtained. (§ 17918 [formerly Civ. Code, § 2468].) The two statutory schemes are materially distinct. Failure to comply with the fictitious-name statutes does not make the parties' promises, agreements, and transactions invalid *as such.* Noncompliance merely prevents a fictitiously named business from *enforcing* obligations owed to it *until* it places on record its true nature and ownership. The object of section 17918 is simply to ensure that those who do business with persons operating under a fictitious name will know the true identities of " 'the individuals with whom they are dealing or to whom they are giving credit or becoming bound.' " (*Asdourian* v. *Araj, supra,* 38 Cal.3d at p. 289, fn. 8, quoting *Levelon Builders, Inc.* v. *Lynn* (1961) 194 Cal.App.2d 657, 662-663 [15 Cal.Rptr. 582].) The statute's purpose is not served by extending its protection to one who committed a tort against a fictitiously named business. On the other hand, because of the dangers of incompetence and dishonesty, it is illegal to *perform compensated work* without a required license; the inducement or consideration offered for the work is thus *invalid and unenforceable ab initio.* (See *Lewis & Queen, supra,* 48 Cal.2d at pp. 151-154.) That the inducement was falsely offered should make no difference.

[9] Justice Broussard asserts that we rely too heavily upon *Lewis & Queen* because that decision expressly recognizes situations in which denial of an unlicensed contractor's just claim would not serve the purposes of section 7031. (Conc. and dis. opn. of Broussard, J., *post,* at p. 1007.) However, *Lewis & Queen* makes clear that any claim against a person *protected* by the licensing law (i.e., a client of the unlicensed contractor) "falls squarely within section 7031"; in such cases, "courts may not resort to equitable considerations in defiance of [the statute] . . . ." (48 Cal.2d at p. 152.)

No California case has squarely held that an unlicensed contractor may transform a barred claim into a permissible one simply by alleging that the unenforceable promises of payment which induced him to perform were false when made. For reasons already stated, we decline to extend *Grant's* reasoning to the situation presented here. In a garden-variety dispute over money owed an unlicensed contractor, the contractor cannot evade section 7031 by alleging that the express or implied promise to pay for the contractor's work was fraudulent.[10] However artful the pleadings, if the primary fraud alleged is a false promise to pay for unlicensed construction work, and the primary relief sought is compensation for the work, section 7031 bars the action.[11]

### DISPOSITION

The judgment of the Court of Appeal is reversed insofar as it upholds Hydrotech's cause of action for fraud, and affirmed in all other respects.

Lucas, C. J., Mosk, J., and Kennard, J., concurred.

**ARABIAN, J.**—I concur in the judgment.

However, rather than attempt to distinguish the three Court of Appeal decisions on which Hydrotech relies (*Grant* v. *Weatherholt* (1954) 123 Cal.App.2d 34 [266 P.2d 185]; *Brunzell Const. Co.* v. *Barton Development Co.* (1966) 240 Cal.App.2d 442 [49 Cal.Rptr. 667]; *Pickens* v. *American Mortgage Exchange* (1969) 269 Cal.App.2d 299 [74 Cal.Rptr. 788]), I would overrule them as patently inconsistent with the statutory language and intent. The mere fact that the Legislature did not act to overrule these cases does not imply legislative approval. As we have pointed out on more than one occasion, "something more than mere silence should be required before that acquiescence is elevated into a species of implied legislation. . . ." (*People* v. *Daniels* (1969) 71 Cal.2d 1119, 1127-1128 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677]; accord *Cianci* v. *Superior Court* (1985) 40 Cal.3d 903, 923 [221 Cal.Rptr. 575, 710 P.2d 375]; *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 300-301 [250 Cal.Rptr. 116, 758 P.2d 58].)

---

[10] Though the point is not crucial to our holding, we note again the Legislature's recent confirmation that it intends section 7031 to operate *regardless* of the form of action attempted, and "*regardless of the merits* of the [unlicensed contractor's] cause of action . . . ." (§ 7031, subd. (a); Stats. 1989, ch. 368, § 1, No. 4 Deering's Adv. Legis. Service, pp. 1262-1263, italics added.)

[11] Nor can Hydrotech claim tort damages stemming from reasonable reliance on false promises that Oasis and Wessman would arrange for a licensed California contractor to "work with" Hydrotech on the pool project. Even if such an arrangement might then have "substantially complied" with the licensing requirements, Hydrotech chose to perform unlicensed contracting activities *despite* the obvious absence of the promised California licensee.

**BROUSSARD, J.,** Concurring and Dissenting.—I agree with the majority insofar as they hold that Business and Professions Code section 7031 (hereafter section 7031) bars plaintiff's actions for breach of contract, breach of implied contract, and money due and owing.

However, I must dissent from the determination that the fraud cause of action is also barred. The language of section 7031 has been repeatedly construed by the Courts of Appeal to permit actions for fraud, and the Legislature, despite amending the code section in other respects, has not changed the crucial language. Under the reenactment rule this should end the case. In any event, sound policy requires that the section should not be construed to bar any fraud claims. The majority's holding, barring some fraud claims but not others, not only rewards fraudulent wrongdoers, but defeats the protective policies of the code section by encouraging intentional wrongdoers to seek out and hire unlicensed contractors, secure in the knowledge that the work need not be compensated.

The complaint clearly alleges a fraudulent scheme whereby defendants with the intent of avoiding payment under their contract insisted that Hydrotech Systems, Inc. (Hydrotech), known to be unlicensed, engage in contracting work for which a license was required. This is not a case where Hydrotech solicited work in California. Hydrotech did not hold itself out as licensed to contract for the design and construction of the pool. Indeed, Hydrotech refused to engage in contracting work. Hydrotech sought only to sell wave-making equipment and sought to avoid involvement in design or construction. Defendants insisted that Hydrotech's unique expertise in design and construction was essential and refused to contract without Hydrotech's services. All parties were aware that Hydrotech had a licensing problem. To induce Hydrotech to perform, defendants promised, in addition to paying for the equipment, that arrangements would be made for a California contractor to "work with" Hydrotech on any construction activities which required a California license. Defendants never intended to, and did not, perform their promises. In reliance on defendants' false promises, Hydrotech furnished the equipment and services in full compliance with the contract. Now defendants, who solicited the contracting services aware that Hydrotech could not lawfully engage in them, seek unjust enrichment because Hydrotech succumbed to their fraudulent promises.

Section 7031 provided at the times relevant here: "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this state *for the collection of compensation for the performance of any act or contract for which a license is required* by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract, except that such

prohibition shall not apply to contractors who are each individually licensed under this chapter but fail to comply with Section 7029." (Italics added.)

Until today, it was settled that section 7031 did not preclude actions for fraud. (*Pickens* v. *American Mortgage Exchange* (1969) 269 Cal.App.2d 299, 302-304 [74 Cal.Rptr. 788]; *Brunzell Constr. Co.* v. *Barton Development Co.* (1966) 240 Cal.App.2d 442, 446 [49 Cal.Rptr. 667]; *Grant* v. *Weatherholt* (1954) 123 Cal.App.2d 34, 42-44 [266 P.2d 185].) In the leading case of *Grant* v. *Weatherholt, supra,* the court reasoned: "Plaintiff's cause of action for fraud is not 'for the collection of compensation for the performance of any act or contract for which a license is required.' Plaintiff's right is the outgrowth of the deceit practiced upon him by the defendants. The validity or invalidity of his contract does not affect that right. Proof of the contract under the cause of action for fraud was merely proof of the circumstances under which plaintiff's services were rendered and his money was expended.

"Plaintiff's action for fraud is not barred by the provision of the above sections of the Business and Professions Code. The sections should be construed and applied so as to accomplish their purpose of protecting the public from dealings with incompetent or untrustworthy contractors. The courts will not impose penalties for noncompliance in addition to those that are provided expressly or by necessary implication. The rule *expressio unius exclusio alterius* has application. [Citations.] The sections of the code which shield from liability those who enter into contracts with unlicensed persons do not purport to shield them from responsibility for their own torts, nor do they relate to actions or proceedings except those that are based upon contract liability . . . . Inasmuch as plaintiff's action for fraud is not for the recovery of compensation under the contract or for breach of it, the fact that he was not licensed at all times does not bar his recovery. He does not sue for any act performed by him, but for acts of the defendants which resulted in his being deceived and damaged." (123 Cal.App.2d at pp. 43-44; see *Pickens* v. *American Mortgage Exchange, supra,* 269 Cal.App.2d 299, 303-304.)

The reasoning is unanswerable. The majority characterize the reasoning of *Pickens, Brunzell Constr. Co.* and *Grant* as "dicta" (maj. opn., *ante,* at p. 1000), but this is the basic reasoning of the cases.

The reenactment rule requires us to follow these cases. " 'Where a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it.' (*People* v. *Hallner* (1954) 43

Cal.2d 715, 719 [277 P.2d 393]; *People* v. *Fox* (1977) 73 Cal.App.3d 178, 181 [140 Cal.Rptr. 615].)" (*Wilkoff* v. *Superior Court* (1985) 38 Cal.3d 345, 353 [211 Cal.Rptr. 742, 696 P.2d 134].) Section 7031 has been repeatedly amended since the 1954 decision in *Grant* v. *Weatherholt* (Stats. 1957, ch. 845, § 1, p. 2067; Stats. 1961, ch. 1325, § 1, p. 3105; Stats. 1965, ch. 681, § 1, p. 2059; Stats. 1989, ch. 368, § 1, No. 4 Deering's Adv. Legis. Service, p. 1262), and it has never provided that fraudulent wrongdoers may take advantage of the section or that denial of access to the courts in cases of fraud is one of the penalties imposed for violation of the licensing law.

The majority pay lip service to this rule. In recognition, they say we should not disapprove *Grant, Brunzell,* and *Pickens.* But then they state each should be limited to its facts. (Maj. opn., *ante,* at p. 1001.) The reenactment rule has always been that the judicial "construction" of a statute has been approved, not merely its application to specific facts.[1]

Even if the reenactment rule were not controlling, the reasoning of the cases is compelling.

Moreover, sound policy requires that we do not go beyond the legislative determination that contract and implied contracts are barred by section 7031. The purpose of the section is the enforcement of the contractor's licensing law. The purpose is accomplished under the code by denying the unlicensed contractor the fruits of his labor and unjustly enriching the other party. The Legislature has thus established severe sanctions and forfeitures. (*Asdourian* v. *Araj* (1985) 38 Cal.3d 276, 282 [211 Cal.Rptr. 703, 696 P.2d 95].) To further the purpose of deterring unlicensed contractors, the Legislature has provided that the unlicensed contractor may not recover in a contract action or implied contract action. It has never provided that fraudulent wrongdoers may be rewarded under the statute or that unlicensed people may not recover for fraud.

This court should not go beyond the penalties and forfeitures established by the Legislature and establish additional ones on its own. The Legislature has not abolished tort remedies such as fraud, and we should not enrich those who rely upon section 7031 in the perpetration of a fraud or in the consummation of a fraudulent scheme. (See *Tenzer* v. *Superscope, Inc.*

---

[1] The concurring opinion implies that recent cases have repudiated the reenactment rule. However, in the cases cited, either there was no reenactment (*People* v. *Daniels* (1969) 71 Cal.2d 1119, 1127-1128 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677]) or the provisions changed in the reenactment were entirely unrelated to the provision previously construed (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 300-301 [250 Cal.Rptr. 116, 758 P.2d 58]; *Cianci* v. *Superior Court* (1985) 40 Cal.3d 903, 922-923 [221 Cal.Rptr. 575, 710 P.2d 375]).

(1985) 39 Cal.3d 18, 29-30 [216 Cal.Rptr. 130, 702 P.2d 212]; *Seymour v. Oerlichs* (1909) 156 Cal. 782, 794 [106 P. 88]; *Southern Cal. etc. Assemblies of God* v. *Shepherd of Hills etc. Church* (1978) 77 Cal.App.3d 951, 958, fn. 3 [144 Cal.Rptr. 46].)

As the Court of Appeal pointed out in the instant case, the purpose of section 7031 is frustrated by holding that fraudulent wrongdoers may escape their debts by asserting the bar of section 7031. As stated above, the purpose of section 7031 is to deter unlicensed persons from engaging in contracting. Allowing fraudulent wrongdoers to obtain the substantial penalties and forfeitures and be unjustly enriched can only encourage owners and contractors to engage in fraudulent schemes to hire unlicensed persons in anticipation that, when the debts come due, they can turn their backs and refuse to pay in reliance on section 7031. As in the instant case, California contractors and owners will be encouraged to seek out and employ unlicensed out-of-state contractors in the hope of obtaining services without paying for them. We should not encourage such wrongdoing. On the other hand, the legislative policy of deterrence is not furthered by denying recovery for fraud. Unlicensed contractors are not encouraged to undertake the unlawful activity by the remote possibility that, if unpaid, they might be able to prove fraud.

In view of the language of section 7031, its consistent construction by the Courts of Appeal, and its history, it is apparent that the Legislature has balanced the dangers of encouraging fraud against the violation of the licensing statute and concluded against rewarding the fraudulent. We should accept its judgment.

The majority rely at length on *Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141 [308 P.2d 713] (maj. opn., *ante*, at pp. 997, 999, 1000-1001), but fail to point out that the court expressly stated that it was enforcing the terms of the statute and need not consider whether the harshness of the forfeiture, the evil of unjust enrichment, and avoidance of encouraging illegal conduct counselled in favor of enforcing the illegal contract. (48 Cal.2d at pp. 151-152.) In the course of its discussion, the court expressly recognized that in some cases "effective deterrence is best realized by enforcing the plaintiff's claim rather than leaving the defendant in possession of the benefit." (48 Cal.2d at p. 151.) In short, *Lewis & Queen* avoided the question whether courts in the absence of a statutory provision imposing a forfeiture penalty would refuse to enforce the illegal contracts violating the licensing law.

The case is of little help to the majority. The majority go beyond the words of the statute, as we have seen. Thus, the majority must show that

"effective deterrence is best realized" by leaving the defendant in possession of the benefit. They fail to do so.

The majority appear to take the position that the provisions of section 7031 will be rendered meaningless if an unlicensed contractor can avoid them by alleging fraud. The argument is not a new one. Prior to this court's decision in *Tenzer* v. *Superscope, Inc., supra,* 39 Cal.3d 18, a few Court of Appeal decisions had reasoned that if a plaintiff, by the transparent device of pleading an intention not to perform at the time of entering into a contract, could avoid statutory provisions designed to prevent fraud like the statute of frauds, the statute would be ineffective. However, mere pleading of fraud is not sufficient; the plaintiff must also prove fraud. In *Tenzer* the court pointed out that the argument in the Court of Appeal decisions assumes the inability of a jury to distinguish between an unkept but honest promise to perform and one which the promisor never intended to perform. As Justice Kaus observed in *Southern Cal. etc. Assemblies of God* v. *Shepherd of Hills etc. Church, supra,* 77 Cal.App.3d 951, 958, footnote 3: "The law is otherwise. (*People* v. *Ashley* (1954) 42 Cal.2d 246, 263-264 [267 P.2d 271].)" (39 Cal.3d at p. 29.) In *Tenzer,* the court concluded that the argument that actual fraud must be permitted to effectuate a statute designed to prevent fraud was invalid and disapproved the contrary cases. (39 Cal.3d at pp. 29-31.) In urging that the courts must grant rewards to those who engage in fraudulent conduct, the majority are seeking to resurrect the cases disapproved in *Tenzer.*

In fairness to the majority, I must recognize that they do not propose to prohibit all actions for fraud brought by an unlicensed contractor. The majority conclude that the proper result was reached in each of the cases, *Grant, Brunzell,* and *Pickens,* where the Courts of Appeal held that the cause of action for fraud by an unlicensed contractor was not barred by section 7031. (Maj. opn., *ante,* at p. 1001.) The majority state that the distinction between those fraud cases and the instant one is that "the primary fraud alleged in each case was external to the construction work as such . . . ." (Maj. opn., *ante,* at p. 1001.) I am not sure what the distinction is. In each case the claim was that the owner or contractor did not intend to perform. In each case the plaintiff was seeking to recover damages so far as appears measured by the falsely promised performance.

If the distinction sought to be made is between fraud cases where the interest protected is collateral to the licensing law and those where the code section is intended as the instrument of fraud, the majority's priorities are misplaced, and even were we to apply them, the majority reach the wrong result on the facts of the case. As between fraudulent wrongdoers who seek to take advantage of their victims on the basis of section 7031 and those

who indulge in other fraudulent conduct, the law should be most concerned with those whose fraudulent schemes seek to take advantage of the statute. Secondly, under the allegations of the complaint, plaintiff sought to sell its wave-making product to defendant without contracting to do the installation. The sale obviously would not involve a violation of the contractor's licensing statute. It was the defendants who insisted that plaintiff engage in the installation of the product and undertake work requiring a license. When the lack of a contractor's license was raised, it was the defendants who promised to arrange for a licensed contractor, never intending to perform their promises. The basic agreement was for the sale of the equipment, and under the test apparently established by the majority, the construction and supervision services appear to be collateral.

I cannot agree that we should reward fraudulent parties and I would affirm the judgment of the Court of Appeal.

Panelli, J., concurred.