Filed 8/24/20  Rodriguez v. Saldivar CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| CECELIA RODRIGUEZ, | |
| Plaintiff and Appellant, | G058292 |
| v. | (Super. Ct. No. 30-2017-00922956) |
| FERNANDO C. SALDIVAR et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Richard Y. Lee, Judge.  Affirmed.

The Law Office of Tien Ho and Tien Ho for Plaintiff and Appellant.

Von Esch Law Group, Robert A. Von Esch IV and David V. Luu for Defendants and Respondents.

\*      \*      \*

Defendants Fernando and Nellie Saldivar own a rental house in Santa Ana. Plaintiff Cecilia Rodriguez, their cousin, alleges the parties entered into an oral agreement in which plaintiff would fix up the house, and, in exchange, defendants would pay her for the work and give her a written long-term lease for the house. After the renovation was complete, plaintiff gave defendants an invoice for payment, orally agreed to pay defendants $1,200 in monthly rent, and then moved into the house. Defendants never directly paid plaintiff for her work, nor did they give her a written lease. Instead, they credited the amount of the invoice to plaintiff's rent. After the credit ran out, plaintiff failed to pay rent and defendants evicted her.

Plaintiff sued defendants, asserting claims for breach of contract, common counts, fraud, unjust enrichment, negligent infliction of emotional distress, and intentional infliction of emotional distress. The case went to trial. After plaintiff rested her case, defendants filed a motion for nonsuit. They argued plaintiff's claims were barred by Business and Professions Code section 7031, which prevents unlicensed contractors from seeking payment for unlicensed work.[1] They also argued her tort and breach of contract claims were time-barred. The trial court granted the motion and entered judgment in defendants' favor.

Plaintiff appeals, arguing section 7031 does not apply to her claims and that there are triable issues of fact as to when her claims accrued. We find the trial court correctly granted the motion. Plaintiff's testimony shows her emotional distress claims began to accrue in March 2015 and were filed more than two years later, which is outside the limitations period. Her other claims seek payment for unlicensed work and are barred by section 7031. Thus, the judgment is affirmed.

---

[1] Further undesignated statutory references are to the Business and Professions Code.

2

# I

## FACTS AND PROCEDURAL HISTORY

Plaintiff and defendants are cousins. Defendants own a rental property on Logan Street in Santa Ana (the property or the house). In March 2013, plaintiff ran into Fernando Saldivar (Fernando) while visiting her brother's home. Fernando told plaintiff that he wanted to rent out the property. At the time, plaintiff was living in a mobile home but wanted to move to Logan Street because she had grown up there and had family members living there. Plaintiff also wanted to move because her current rent at the mobile home, which was $1,500 a month, was becoming unaffordable. The parties entered into an oral agreement in which plaintiff would fix up the property and then rent it from defendants. As plaintiff described the deal, "[Fernando] told me if I did the work . . . that he would reduce the rent . . . ."[2] Plaintiff also believed she would be separately reimbursed by defendants for fixing up the property.

During this conversation, the parties did not agree on the specific amount of plaintiff's rent or discuss how long she could live at the property. Plaintiff also did not inspect the interior of the property at this time. While she had previously been to the house around January 2012 for a birthday party, she had only seen a limited portion of the house then. Thus, plaintiff was unaware of the amount of work that needed to be done at the property when the parties entered into the oral agreement.

Plaintiff put her mobile home up for sale in April 2013 and sold it in June 2013. She then moved in with her brother, who lives across the street from the property. Plaintiff inspected the interior of the house for the first time in August 2013. Though plaintiff has never been a licensed contractor, she made substantial renovations to the house with the help of her family and friends, including demolition work, painting,

---

[2] Similarly, plaintiff testified at deposition that "'[Fernando] said you give me the receipts for the supplies and I'll pay you as far as the work that is being done. We'll take it out of the rent. That was the agreement.'"

3

installing new flooring, changing bathroom fixtures (bathtub, washbasin, and toilet), rerouting plumbing lines, replacing windows and drywall, putting in light switches, and adding glass door knobs and a ceiling fan. The work was largely done by plaintiff's friends and family members since plaintiff was unable to lift heavy objects due to her health. They performed the work for free, so plaintiff did not incur any labor expenses.

The repair work was completed around August or September 2014. Plaintiff presented defendants with an invoice for supplies in the amount of $6,571.88, and the parties orally agreed that plaintiff would pay $1,200 in monthly rent. Plaintiff subsequently moved into the property. No written lease was ever executed.

While plaintiff knew she was obligated to pay defendants rent, she never paid them. Instead, defendants credited the amount of the invoice to her rent, which plaintiff claims was done without her consent. The credit eventually ran out and plaintiff's first rent payment was due on March 1, 2015. Plaintiff did not pay, so on March 3, 2015, Fernando sent her an e-mail stating her rent was delinquent. On March 10, 2015, plaintiff received a letter and three-day notice from defendants informing her that she had three days to pay the outstanding rent of $1,200. Plaintiff did not pay the outstanding rent and was served with an unlawful detainer complaint. She did not respond, and defendants obtained a judgment against her on April 3, 2015, for possession of the property.

After the judgment, Fernando e-mailed plaintiff offering to work with her on the owed rent and to give her more time to pay. At trial, plaintiff could not remember whether she responded. In any case, she did not pay the outstanding rent even though she did not have any money problems that would have prevented her from doing so. She was evicted sometime in April 2015.

Plaintiff filed this lawsuit on May 26, 2017. She then filed a first amended complaint in August 28, 2018, and a second amended complaint in June 21, 2019 (complaint). Generally, the complaint alleged the parties entered into a contract in which

4

plaintiff agreed to fix up the property in exchange for money and a written lease for the property. Plaintiff fixed up the property, but defendants never paid her or gave her a written lease. The complaint further alleged defendants made these promises without any intention of keeping them. The complaint set forth six causes of action: (1) breach of contract, (2) common counts, (3) fraud, (4) unjust enrichment, (5) negligent infliction of emotional distress, and (6) intentional infliction of emotional distress.

Trial in this matter began on June 24, 2019. Plaintiff called seven witnesses, including herself. After plaintiff's presentation of evidence, defendants brought a motion for nonsuit on three separate grounds. First, plaintiffs' claims were barred by section 7031, which prevents unlicensed contractors from seeking compensation for unlicensed contracting work. Second, plaintiff's breach of contract and tort claims were time-barred. Third, plaintiff did not establish that she suffered any damages.

The trial court granted defendants' motion without explaining its reasons. Judgment was entered in favor of defendants and against plaintiff on July 15, 2019. Plaintiff appeals.

II

DISCUSSION

A. *Standard of Review*

"A defendant is entitled to a nonsuit if the trial court determines the evidence presented by plaintiff is insufficient to permit a jury to find in his or her favor as a matter of law. [Citation.] 'In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded.' [Citation.] The plaintiff's evidence, however, must have substance upon which reasonable minds can differ; evidence that raises mere conjecture or

5

speculation is insufficient. [Citation.] The same standard applies on appeal." (*IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 650.) "Only the grounds specified by the moving party in support of its motion should be considered by the appellate court in reviewing a judgment of nonsuit." (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 839.)

*B. Section 7031*

The evidence plaintiff presented at trial shows her claims for breach of contract, common counts, fraud, and unjust enrichment are barred by section 7031. However, we find section 7031 does not bar plaintiff's emotional distress claims because defendants have not cited any authority on this issue. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*).)

Under section 7031, subdivision (a), "no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract regardless of the merits of the cause of action brought by the person."

"[S]ection 7031 contains no implied exception for foreign entities, isolated transactions, or other 'exceptional' circumstances." (*Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 992 (*Hydrotech*).) Rather, it applies "[r]egardless of the equities," to "bar[] all actions, however they are characterized, which effectively seek 'compensation' for illegal unlicensed contract work. [Citation] Thus, an unlicensed contractor cannot recover either for the agreed contract price or for the reasonable value of labor and materials. [Citations.] The statutory prohibition operates even where the person for whom the work was performed knew the contractor was unlicensed." (*Id*. at

p. 997.) "Indeed, it has long been settled that 'the courts may not resort to equitable considerations in defiance of section 7031.' [Citation.] '"Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business *outweighs any harshness between the parties*, and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of this state. . . ."'" (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 423.)

Plaintiff admitted at trial that she has never been a licensed contractor. She does not dispute that she performed work on the property that requires a license, nor does she dispute that she acted as a contractor when she renovated the property.[3] Her causes of action for breach of contract, common counts, and unjust enrichment all seek compensation for the unlicensed work that plaintiff performed on the property (the fraud claim is addressed below). The breach of contract claim alleges defendants breached the parties' oral contract by failing to repay plaintiff for her work on the house. Likewise, the claim for common counts is based on defendants' failure to pay the invoice plaintiff submitted after completing the repair work. Finally, plaintiff's unjust enrichment claim asserts defendants have been unjustly enriched by plaintiff's work on the property. Because these claims all seek compensation for plaintiff's unlicensed work, they are barred by section 7031. (*Hydrotech*, *supra*, 52 Cal.3d at p. 997.)

Plaintiff makes three arguments against applying section 7031 to her claims. None are persuasive.

---

[3] "[A] contractor is any person who undertakes to or offers to undertake to, . . . or does himself or herself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, . . . or other structure, project, development or improvement, or to do any part thereof." (§ 7026.) A contractor also includes "[a]ny person . . . who . . . undertakes, offers to undertake, purports to have the capacity to undertake, or submits a bid to construct any building or home improvement project, or part thereof." (§ 7026.1, subd. (a)(2)(A).)

7

First, plaintiff contends the parties did not enter into a construction contract because she did not know that construction work requiring a license would be needed at the property when she agreed to fix it up in March 2013. She concludes "[i]f the agreement was not a 'construction contract' then [section] 7031 would not have applied because [plaintiff] was not required to have a contractor's license at that time."

Even if plaintiff is correct that the parties never entered into a construction contract, section 7031, subdivision (a), bars recovery "for the performance of *any act or contract* where a license is required." (Italics added.) Section 7031 "does not require contractors to operate exclusively by formal contract; it simply seeks to deter them from offering or performing unlicensed services for pay." (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.*, *supra*, 36 Cal.4th at pp. 427-428.) "[O]ne may not avoid the all-or-nothing bar against recovery for unlicensed services simply because there is no formal contract. In other words, one may not recover compensation for work accomplished under a contract unless duly licensed for the work '*at all times* during the performance of that . . . contract[]' [citation], and, in any event, he or she may not recover compensation for any 'act' requiring a license unless duly licensed '*at all times* during the performance of that act . . . .'" (*Id*. at p. 428.) As such, even if no construction contract existed, plaintiff is still barred from recovering compensation for any act that required a license. And she fails to identify any work on the house that did not require a license.

Second, plaintiff argues her fraud claim is not barred by section 7031. The primary fraud at issue, she claims, was defendants' false promise to provide a long-term written lease agreement. She insists the work she performed as an unlicensed contractor was only peripheral to that false promise.

To begin, plaintiff cites no evidence showing defendants promised her a long-term written lease. Instead, she only cites allegations from the unverified complaint, which are not evidence. (*Cassady v. Morgan, Lewis & Bockius LLP* (2006) 145

8

Cal.App.4th 220, 241.) "'It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations.' [Citations.] If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived." (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.) Plaintiff's failure to cite evidence is telling since she testified at least once during trial that defendants offered her a lease of indefinite duration: "[Fernando] stated that if I could come and live there -- . . . you know, he didn't say what time but it was like indefinite, you know what I mean? I guess until I died or I was too old or something. I don't know."

Regardless, the argument is unconvincing even if considered. Section 7031 "bars an unlicensed contractor's claim for fraud when the primary deceit alleged is a false promise to pay, and the damages primarily consist of, or are measured by, the price or value of the work and materials furnished." (*Hydrotech*, *supra*, 52 Cal.3d at p. 992.) "[A]n unlicensed contractor may not circumvent the clear provisions and purposes of section 7031 simply by alleging that when the illegal contract was made, the other party had no intention of performing. Section 7031 places the risk of such bad faith squarely on the unlicensed contractor's shoulders. 'Knowing that they will receive no help from the courts *and must trust completely to each other's good faith*, the parties are less likely to enter an illegal arrangement in the first place.'" (*Id.* at p. 998.) Conversely, a fraud claim is not barred when "the plaintiff's involvement as an unlicensed contractor was incidental to the overall agreement or transaction between the parties." (*Id.* at p. 1001.)

Here, plaintiff's work as an unlicensed contractor was not incidental to the overall agreement. As set forth in the complaint, defendants purported promise of a long-term written lease was offered as compensation for plaintiff's work at the property. (See *Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 32 ["'compensation'" under section 7031 encompasses "'payment or reward in any form'"]; *K & K Services, Inc. v. City of*

9

*Irwindale* (1996) 47 Cal.App.4th 818, 823-824 [city permit for certain fill rights at a quarry was compensation under section 7031].) Thus, the fraudulent offer of a written lease was nothing more than a false promise to pay for unlicensed construction work. A fraud claim based on such allegations is barred by section 7031. (*Hydrotech*, *supra*, 52 Cal.3d at pp. 1001-1002.)

Third, plaintiff appears to suggest that section 7031 does not apply because she never received compensation for her work. We cannot make sense of this argument. Generally, a section 7031 defense can only apply when a plaintiff does not receive some amount of compensation for their work and seeks payment from the defendant. Moreover, plaintiff does not support this assertion with reasoned argument or citations to authority, so we treat the point as waived. (*Badie*, *supra*, 67 Cal.App.4th at pp. 784-785.)

## C. Statute of Limitations

Plaintiff's testimony at trial shows her remaining emotional distress claims are barred by the applicable statute of limitations.

Claims for intentional infliction of emotional distress and negligent infliction of emotional distress are each subject to a two-year statute of limitations. (Code Civ. Proc., § 335.1; *Wassmann v. South Orange County Community College Dist.* (2018) 24 Cal.App.5th 825, 852-853.) There are two categories of negligent infliction of emotional distress claims: direct and bystander claims. (*Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1071.) Here, plaintiff asserts a direct claim because she alleges defendants owed her a direct duty of care, which they breached. (*Id*. at p. 1073.) For a direct negligent infliction of emotional distress claim and an intentional infliction of emotional distress claim, the statute of limitations accrues once the plaintiff suffers

10

severe emotional distress as a result of the defendant's conduct.[4]  (See *Wassmann*, at pp. 852-853.)

Plaintiff alleges her emotional distress was triggered by defendants' act of fraud.  The record establishes the alleged fraud was apparent in April 2015 at the latest.  Defendants started the eviction process in March 2015 and evicted plaintiff in April 2015.  At the time of eviction, it was clear that defendants would not provide plaintiff with the promised long-term written lease or provide any other compensation for her work.  As such, the injury causing event took place more than two years before plaintiff filed this action on May 26, 2017.

Further, plaintiff's testimony at trial shows she began experiencing severe emotional distress in March 2015.  Plaintiff testified that she began seeing a therapist and a doctor in March 2015 after learning that she was being evicted.  At the time, she was suffering from stress and anxiety and had trouble eating and sleeping.  She decided to see a doctor because she felt hopeless and had suicidal thoughts.  She wanted the doctor to "rearrange [her] medication because [she] was ready to jump off the roof someplace."  She "couldn't take it any more [*sic*]" and "wanted to get it over with."

Plaintiff argues that "'[s]erious emotional distress exists if an ordinary, reasonable person would be unable to cope with it.'"  (Quoting Jud. Council of Cal., Civ. Jury Instns. (2020) CACI No. 1620, p. 948.)  She contends her testimony above does not establish as a matter of law that by April 2015 her emotional distress was beyond what a reasonable person could handle.

We respectfully disagree.  While the severity of emotional distress a person experiences can be difficult to quantify, plaintiff's testimony plainly shows she had

---

[4]  "[B]ystander liability is premised upon a defendant's violation of a duty not to negligently cause emotional distress to people who observe conduct which causes harm to another."  (*Burgess v. Superior Court*, *supra*, 2 Cal.4th at pp. 1072-1073.)  A bystander claim "accrues at the time of the injury-producing event."  (*Campanano v. California Medical Center* (1995) 38 Cal.App.4th 1322, 1328-1329.)

11

serious emotional distress in March 2015. At that time, she began seeing a therapist and a doctor due to anxiety, stress, and suicidal feelings. Her distress was clearly beyond what a normal person would be able to cope with. Also, plaintiff does not explain when her emotional distress became sufficiently serious to cause her claims to accrue. Given this lack of explanation and plaintiff's testimony from trial, we can only conclude that plaintiff's emotional distress claims began to accrue in March 2015. (See *Badie*, *supra*, 67 Cal.App.4th at pp. 784-785; *Duarte v. Chino Community Hospital*, *supra*, 72 Cal.App.4th at p. 856.) Because plaintiff did not file her complaint until May 2017, her emotional distress claims are barred by the two-year statute of limitations.

Since plaintiff's claims are barred by either section 7031 or the applicable statute of limitations, we do not address defendants' argument that plaintiff did not suffer any damages.


III

DISPOSITION

The trial court's judgment is affirmed. Defendants are entitled to their costs on appeal.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.


12