NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3333
_____

In re Abeinsa Holding Inc., et al., Reorganized and Liquidating Debtors,

Crown Financial, LLC,
                                    Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civ. No. 1-19-cv-00643)
District Judge:  Colm F. Connolly
_____

Submitted under Third Circuit LAR 34.1(a)
June 1, 2021

Before:  HARDIMAN, PHIPPS, and COWEN, *Circuit Judges*.

(Filed: September 1, 2021)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PHIPPS, *Circuit Judge*.

California law, which governs this dispute, imposes harsh, if not draconian, consequences upon unlicensed contractors who perform construction work in the state: in general, they may not recover any compensation for their services. *See* Cal. Bus. & Prof. Code § 7031(a). That principle permeates this controversy, which involves an unlicensed subcontractor that performed millions-of-dollars' worth of construction work in California for a general contractor, which, for financial reasons, slow-paid the subcontractor's invoices. Because the unlicensed subcontractor needed those funds to pay its own workers and suppliers, it sold its invoices to a financial firm in return for prompt, but twenty-percent discounted, payments. When the financially distressed general contractor eventually filed for bankruptcy, the financial firm submitted a proof of claim for the outstanding balance of the invoices. The Bankruptcy Court rejected its claim, as did the District Court on appeal. In reviewing the legal conclusions of the courts below *de novo*, *see In re Nortel Networks, Inc.*, 669 F.3d 128, 136–37 (3d Cir. 2011), we will affirm: due to California's strict rule disallowing compensation for unlicensed construction work, the financial firm's claim is invalid.

I. FACTUAL BACKGROUND

At the heart of this case are contracts to supply and install insulation on piping and equipment as part of the construction of a concentrated solar power plant in the Mojave Desert in California. The general contractor, Abener Teyma Mojave General Partnership ('ATM'), subcontracted with Synflex Insulation, LLC, to perform that service in exchange for approximately $10.2 million. Although it was based in Texas, Synflex

2

represented that it held a California contractor's license, as required by California law for construction work in the state. *See* Contractors State License Law, Cal. Bus. & Prof. Code §§ 7000–7191; *see also White v. Cridlebaugh*, 100 Cal. Rptr. 3d 434, 441–42 (Cal. Ct. App. 2009).

A few months into performance, the relationship began to sour. Despite Synflex's completion of various milestones under the construction contracts, ATM was slow to remit payments. That posed a problem for Synflex, which needed funds to pay its own workers and suppliers. To alleviate that cash-flow issue, Synflex endeavored to sell its accounts receivable through a financial arrangement known as 'factoring.' *See* 4 James J. White et al., Uniform Commercial Code § 30:20 (6th ed. July 2021 update) (describing factoring as a form of financing in which a factor purchases accounts receivable at a discount in exchange for assignment of the right to collect the full amount owed on the accounts). Only one financial firm, Crown Financial, LLC, a Texas factoring company, was receptive to such an arrangement with Synflex.

In April 2014, Crown, Synflex, and ATM formalized that factoring arrangement. First, Synflex and Crown executed an account purchase agreement. Under that contract, Synflex agreed to submit its accounts receivable, in the form of invoices, to Crown for review. Crown then had the option to factor those invoices by purchasing them at eighty-percent face value. In exchange, Synflex would assign Crown the exclusive right to collect the full amount due on the invoices, subject to potential rebates to Synflex. Second, the three parties signed a letter agreement. Through that agreement, Crown formally notified ATM that Synflex had "assigned all rights, title, and interest in its

accounts receivable" to Crown. Letter Agreement (Apr. 3, 2014) (JA 22). The agreement further instructed ATM to remit all future invoice payments to Synflex to Crown's bank account. Finally, through ATM's signature on the letter agreement, it confirmed that the invoices listed in an attachment were "in line for payment" and that "the payment obligation of [ATM] is not subject to any offsets, back charges, or disputes of any kind or nature." *Id.*

After finalization of the letter agreement, Crown began purchasing certain invoices and wiring the discounted funds to Synflex. That process continued for six-and-a-half months and included forty-two invoices. In total, Crown remitted approximately $4.3 million to Synflex in exchange for the right to collect about $5.4 million from ATM.

But just as it had done before, ATM slow-paid its obligations. And in October 2014, despite still owing Crown about $2 million, ATM ceased making payments altogether. Around that time, it came to light that Synflex did not hold – and never had held – a valid California contractor's license.

## II. PROCEDURAL HISTORY

In early 2016, ATM, along with several related entities, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. As part of those bankruptcy proceedings, Synflex and Crown each filed a proof of claim against ATM. *See* 11 U.S.C. § 501. Crown, in particular, claimed a right to $2,022,527 – the amount outstanding on Synflex's factored invoices. But the litigation trustee, Drivetrain, LLC, objected to both Synflex and Crown's claims, asserting that they should be disallowed as "unenforceable

against the debtor," *id.* § 502(b)(1), due to Synflex's status as an unlicensed subcontractor, *see* Cal. Bus. & Prof. Code § 7031(a).

Exercising jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(2)(B), the Bankruptcy Court sustained the objections. As to Synflex's claim, the Bankruptcy Court held that Synflex was not entitled to any compensation for its "illegal unlicensed contract work" under California law. Bankr. Ct. Op. 10 (citing Cal. Bus. & Prof. Code § 7031) (JA 432). And treating Crown as an assignee of Synflex, the Bankruptcy Court held that Crown likewise lacked an enforceable claim.

Crown appealed, seeking review in the District Court of the Bankruptcy Court's final order. *See* 28 U.S.C. § 158(a)(1). The District Court affirmed the disallowance of Crown's claim, reasoning that, as Synflex's assignee, "Crown has exactly what Synflex has: no right to payment." District Ct. Op. 9 (JA 9).

Crown again appealed, invoking the appellate jurisdiction of this Court. *See* 28 U.S.C. §§ 158(d)(1), 1291. It now contends that it has a valid claim against ATM – not as Synflex's assignee under the construction contracts, but rather directly under the April 2014 letter agreement.

## III. DISCUSSION

### A. *California Law Governs Crown's Claim*

5

The Bankruptcy Code disallows claims that are "unenforceable against the debtor . . . under any . . . applicable law." 11 U.S.C. § 502(b)(1). To evaluate the enforceability of a claim, federal courts must apply the substantive law that created the debtor's obligation. *See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007). This case implicates two potential sources of ATM's putative obligations to Crown: first, the construction contracts, and second, the letter agreement. The question thus becomes which state's law governs those documents. There is no dispute that California law applies to the construction contracts.[1] But throughout this litigation, the parties have disagreed about which law applies to the letter agreement, with Crown arguing that Texas law applies and the litigation trustee (on behalf of ATM) arguing that California law applies. Given the possibility of a true conflict between those potentially applicable laws,[2] a choice-of-law analysis is required. *See Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997).

This Court has not yet precedentially resolved the choice-of-law rules applicable in bankruptcy proceedings – an issue that has long divided the circuit courts. *See generally* 19 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4518 (3d ed. April 2021 update); 17A Moore's Federal Practice – Civil § 124.30[1]

---

[1] In addition to consensus among the parties, choice-of-law provisions in those contracts designate the applicability of California substantive law.

[2] As explained below, California imposes strict consequences on unlicensed construction work as a matter of public policy – including the voiding of certain contracts. Texas contract law, however, might not carry the same implications based on an out-of-state public policy.

(2021). At least one circuit has directed bankruptcy courts to apply the choice-of-law rules of the forum state, as do district courts sitting in diversity. *See, e.g.*, *In re Payless Cashways*, 203 F.3d 1081, 1084 (8th Cir. 2000); *cf. Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Another has instructed bankruptcy courts to apply federal choice-of-law principles. *See, e.g.*, *In re Lindsay*, 59 F.3d 942, 948 (9th Cir. 1995). And finally, as a sort of compromise between the two, some circuits – including a panel in this Circuit in a nonprecedential decision – have held that bankruptcy courts should apply forum-state choice-of-law rules unless there is an overriding or conflicting federal interest. *See, e.g.*, *In re PHP Healthcare Corp.*, 128 F. App'x 839, 843 (3d Cir. 2005) (per curiam); *In re Gaston & Snow*, 243 F.3d 599, 606–07 (2d Cir. 2001); *In re Merritt Dredging Co.*, 839 F.2d 203, 206 (4th Cir. 1988).

This case, however, does not require resolution of that issue. The state choice-of-law rules of Delaware (the forum state) and the federal choice-of-law rules of this Circuit follow the same approach. They both apply the substantive law of the state with the most significant relationship to the parties and the underlying transaction. *See, e.g.*, *Cong. Talcott Corp. v. Gruber*, 993 F.2d 315, 319 n.4 (3d Cir. 1993) (applying the 'most significant relationship' test of the Second Restatement of Conflicts in a federal-question case); *Certain Underwriters at Lloyds v. Chemtura Corp.*, 160 A.3d 457, 464 (Del. 2017) (following the Second Restatement of Conflicts and its 'most significant relationship' analysis); *see also* Restatement (Second) of Conflicts § 188 (Am. L. Inst. 1988).

Under that 'most significant relationship' test, California law governs the letter agreement. The agreement flows directly from the California construction contracts: it

7

gives notice of the assignment of rights that arose under those contracts, and it provides instructions for the payment of invoices reflecting unlicensed construction work performed in California pursuant to those contracts. And beyond the terms of the agreement, California has a significant public policy interest in restricting the recovery of compensation for such work performed in the state. That strong interest coupled with the interrelated nature of the letter agreement and the underlying construction contracts strongly favor the application of California law to the letter agreement. The few Texas contacts – including that Synflex and Crown (but not ATM) are Texas companies – do not overcome that conclusion.

### B. California Law Imposes Strict Consequences for Unlicensed Construction Work

Several principles of California law are relevant here. First, under California law, contractors must be licensed to perform construction work in the state. *See* Cal. Bus. & Prof. Code § 7026 (defining "contractor"); *id.* § 7028 (declaring the performance of unlicensed contract work to be "a misdemeanor" and setting forth criminal penalties). A failure to be duly licensed at all times during performance comes with a severe consequence: the loss of a legally enforceable right to compensation for the services provided. *See id.* § 7031(a). That "stiff all-or-nothing penalty," *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co.*, 115 P.3d 41, 49 (Cal. 2005), applies "[r]egardless of the equities," *Hydrotech Sys., Ltd. v. Oasis Waterpark*, 803 P.2d 370, 376 (Cal. 1991), and is subject to only a narrow exception for good-faith lapses, *see* Cal. Bus. & Prof. Code § 7031(e). The California Supreme Court has explained the harshness of

8

this consequence as a means of deterring unlicensed contract work, thereby "protect[ing] the public from incompetence and dishonesty." *Hydrotech*, 803 P.2d at 374; *see also Lewis & Queen v. N. M. Ball Sons*, 308 P.2d 713, 719 (Cal. 1957) (explaining that § 7031(a) "represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business outweighs any harshness between the parties").

California law also provides that a contract with an unlawful object is void. *See* Cal. Civ. Code § 1598; *see also id.* § 1667 (defining "unlawful" as "[c]ontrary to an express provision of law" or "to the policy of express law, though not expressly prohibited"). Consistent with that principle, California courts will not enforce illegal and void contracts. *See Lewis & Queen*, 308 P.2d at 719–20 (noting "the general rule that illegal contracts are unenforceable"); *Gatti v. Highland Park Builders, Inc.*, 166 P.2d 265, 266 (Cal. 1946) ("[A] contract made contrary to the terms of a law designed for the protection of the public and prescribing a penalty for the violation thereof is illegal and void, and no action may be brought to enforce such contract.").

### C. The Letter Agreement Is Unenforceable

Putting the pieces together, in California, a contract performed by an unlicensed contractor is generally illegal and void, and, thus, unenforceable. *See Lewis & Queen*, 308 P.2d at 721 (holding that a subcontractor's "failure to obtain a license [before performance] made the transaction illegal"); *Loving & Evans v. Blick*, 204 P.2d 23, 29

9

(Cal. 1949) ("[T]he contract . . . was illegal and void because of [the contractors'] failure to comply with the licensing requirements."); *Wilson v. Steele*, 259 Cal. Rptr. 851, 852 (Cal. Ct. App. 1989) ("A contract by an unlicensed contractor is void and illegal."); *cf. MW Erectors*, 115 P.3d at 61 (holding that "application of the void contract principle is inappropriate" where a contractor, "though unlicensed when a contract for services was entered, was fully licensed at all times during performance"). It follows that a contract to pay a third party for work performed by a contractor who was unlicensed during performance – an object that is "[c]ontrary to the policy of express law, though not expressly prohibited," Cal. Civ. Code § 1667 – would also be void, *id.* § 1598, and unenforceable.

Applying that principle here, the letter agreement – the only basis upon which Crown now seeks recovery[3] – is void and unenforceable. To the extent that the letter agreement otherwise satisfies the elements of a contract, it loses its enforceability because its object is to pay Crown for unlicensed construction work that Synflex performed. And enforcing an agreement with that object would "circumvent [California's] clear statutory policy of deterring unlicensed contract work." *Hydrotech*, 803 P.2d at 372. Put differently, if Crown could enforce the letter agreement, then any

_____

[3] *See* Crown Br. 11 ("Synflex did not hold a California contractor's license and Section 7031 makes unenforceable any claim by an unlicensed contractor for compensation. Understanding that an assignee suing on an assigned claim has no greater rights tha[n] the assignee, Crown did not bring that claim [under the construction contracts]. . . . Crown asserted only a claim based on the direct promise [in the letter agreement].").

10

unlicensed contractor could evade California's strict prohibition simply by filtering compensation for its illegal construction work through a financial intermediary. Nothing in California law suggests a willingness to allow the state's harsh consequence for unlicensed construction work to be so easily overcome. *See Walker v. Nitzberg*, 91 Cal. Rptr. 526, 531–32 (Cal. Ct. App. 1970) (holding that an unlicensed contractor's assignee had no right to recover because otherwise "the contractor's license law could be easily evaded . . . by the mere making of an assignment of the contract upon which [the unlicensed contractor] himself could not recover"). Accordingly, the letter agreement is not enforceable, and Crown's claim against ATM is invalid.

* * *

In sum, the letter agreement does not provide Crown with a right to payment from ATM. The Bankruptcy Court and the District Court therefore properly disallowed its claim. *See* 11 U.S.C. § 502(b)(1). We will affirm.